### WEINZORPFLIN v. THE STATE.

The joinder of counts for separate felonies in an indictment, is a good cause for quashing the indictment on motion made before pleading to issue. But the refusal of the Court in such case after plea, to compel the prosecuting attorney to elect on which count he will proceed, is not error.

A caption of an indictment which shows the indictment to have been found by a grand jury at a Circuit Court held, at, &c., on, &c., is sufficient. It need not specify the qualifications of the jurors, nor allege them to be good and lawful men.

If a person has been once put on his defence on a legal indictment before a competent jury, and the jury has been unnecessarily discharged, such discharge is equivalent to an acquittal of the defendant.

A verdict finding the defendant guilty on one of several counts of an indictment, and saying nothing of the other counts, is, as to such other counts, equivalent to an express finding of not guilty. A judgment may be rendered on such verdict; and the proceedings will be a bar to a future prosecution for any of the offences charged in the indictment.

The entry, after such judgment, of a *nolle prosequi* of the counts concerning which the verdict is silent, is a nullity.

If the description of rape in an indictment leave out the word " unlawfully," but be in accordance with the common law definition of the offence, it is sufficient.

A new trial may be granted to a defendant in any criminal case.

A witness cannot be impeached on the ground that he had made previous statements inconsistent with his testimony, until he has been asked whether he had made such statements.

The refusal of the Circuit Court to grant a new trial, where the question depends merely on the credibility of a witness, will not be considered erroneous.

May Term,
1844.

WEINZORP-
FLIN
v.
THE STATE.

Thursday,
July 11.

ERROR to the *Gibson* Circuit Court.

DEWEY, J.—This was an indictment, found at the *Vanderburgh* Circuit Court, against the plaintiff in error, and, by a change of venue, tried in the *Gibson* Circuit Court. The caption shows that the indictment was found by a grand jury impanelled and sworn at the Circuit Court of the former county, (naming the judges,) at its *September* term held at, &c., on, &c. The indictment contains three counts. The first count alleges that the plaintiff in error, on, &c., at, &c., " with force and arms, in and upon one *A. M. S.*, the wife of one *M. S.*, of, &c., then and there being, violently and feloniously did make an assault, and her the said *A. M. S.*, then and there, feloniously did ravish and carnally know, by force and against her will, contrary to the form of the statute," &c. The second count is for an assault and battery, and the third count for an assault, upon the same person, with intent to commit a rape. The defendant pleaded not guilty. It appears by a statement of the clerk of the Circuit Court, but not by a bill of exceptions, that the defendant, after he had pleaded, moved the Court to compel the prosecuting attorney to elect one count on which he would try the defendant, and that the motion was overruled. The jury found the defendant guilty upon the first count of the indictment, and awarded his punishment to be confinement for five years, at hard labour, in the state-prison. Motions for a new trial and in arrest of judgment were overruled ; and sentence was passed according to the verdict.

Neither the verdict, nor the judgment of the Court, mentions the second or third counts. As to these counts, the prosecuting attorney entered a *nolle prosequi* after the rendition of the judgment. It appears by one bill of exceptions, that, on the trial, the counsel of the defendant proposed to ask a witness two questions as to what the principal witness for the state had told him. The object of these questions was to impeach the credit of the witness for the state, by showing that she had made statements inconsistent with her testimony. The Court, at first, refused to suffer either of the

questions to be put; but it appears by another bill of exceptions that one of them was afterwards asked and answered. The matters alleged as errors are,

1. The refusal of the Court to compel the prosecuting attorney to elect the count on which he would try the defendant.

2. The refusal of the Court to arrest the judgment, which it is contended should have been arrested for the following reasons, 1, because it does not appear that the indictment was found by legally qualified grand jurors impanelled and sworn in open Court; 2, because the verdict was insufficient; and 3, because the first count of the indictment (the only one named in the verdict) was defective.

3. The refusal of the Court to grant a new trial, which it is alleged should have been granted for two reasons, 1, because the Court did not suffer the question, having for its object the impeachment of the state's witness, to be put; and 2, because the verdict was not authorized by the evidence.

The question raised by the joinder of counts is not properly before us. The statement of the clerk, that a motion was made to compel the prosecuting attorney to elect, is no part of the record. But as this point, had the record contained it, would have had no effect on the result of the case, we have concluded to consider it. The law is well settled, that distinct and separate felonies cannot regularly be joined in the same indictment; and such joinder is good cause to quash an indictment, on motion made before the defendant has pleaded to issue. But if the objection be not urged until after plea, it lies in the discretion of the Court whether to compel the state to elect on which count to try the defendant or not; and it is no ground of error if the Court refuse to compel the election, though the felonies joined may be punished with different degrees of severity. 1 Chitt. C. L. 253.—*M'Gregg* v. *The State*, 4 Blackf. 101. Under the laws of this state, all crimes punishable by confinement in the penitentiary—a punishment not only affecting personal liberty but one infamous in its nature—must be viewed as felonies in contradistinction to misdemeanors. The offences charged in the indictment under consideration all subject the offender to such imprisonment, that in the first count to a

longer, and those in the second and third counts to a shorter term. We could not, therefore, pronounce the refusal of the Court to compel the prosecuting attorney to make his election to be erroneous.

The objection that the record does not show a regularly impanelled and sworn grand jury cannot be sustained. The principal object of the caption is to show that the indictment was found in a Court of competent jurisdiction. The caption in this case states that the grand jury impanelled and sworn *at* the Circuit Court of, &c., at its *September* term held, &c., found the indictment. This is equivalent to saying the jury was impanelled, &c., in open Court; and as the Circuit Court possesses extensive and general criminal jurisdiction, it was not necessary to specify the qualifications of the jurors, or to allege that they were good and lawful men. All this must be presumed. *Beauchamp* v. *The State*, 6 Blackf. 299.

The next question arising under the motion in arrest of judgment is important, and one of some difficulty. Is the verdict, convicting the defendant on the first count of the indictment, and taking no notice of the second and third counts, a valid verdict?

The plaintiff in error contends that, as he was put upon his trial on all the counts, he was entitled to have them all tried, and to have a verdict and judgment which should bar a future prosecution for the same offences. Such was his right, and if the proceedings have not that effect, the judgment must be reversed. It was formerly maintained in *England* that a jury, when once sworn in a criminal case, at least in a capital one, could not be discharged without returning a verdict. 1 Inst. 227, *b*; 3 *id.* 110. It would seem to follow from this doctrine that, should the jury be discharged, the defendant could not be again tried for the same offence. If there is, at the common law, any distinction in this respect between capital and other criminal cases, such a distinction does not exist in this state. Our constitution, article 1, section 13, provides that no accused person, in a criminal prosecution, " shall be twice put in jeopardy for the same offence." This language embraces all indictments whether for capital crimes or otherwise. But the rule of law, as laid down by Lord *Coke*, has not been invariably adhered to. Many cases, both in this country and

*May Term, 1844.*

WEINZORP-FLIN
v.
THE STATE.

in *England*, have occurred in which, either by the consent of the defendant, or from strong necessity, the jury have been discharged without rendering a verdict, and the defendant again put upon his trial. It is evident that unless such were the law, the guilty would often escape punishment, and public justice be defeated. It is clear, however, that none of these exceptions embraces the cause under consideration. Here there was a trial; and if the jury did not render a valid verdict, the omission was not occasioned by the consent of the defendant, nor by the necessity of the case.

There have been several decisions bearing closely upon this cause, but none of them are precisely in point. Their analogy is, however, we think, strong enough to decide the question.

In the case of *The People* v. *Barrett et al.* 2 Caines' Rep. 304, the prosecuting attorney, finding his evidence would not support the indictment, moved the Court for leave to withdraw a juror; the motion was granted. The defendants were afterwards tried and found guilty. The Court arrested the judgment, on the ground that the insufficiency of the state's evidence to convict was not a good cause for withdrawing a juror, and did not present a case justifying the subsequent trial of the defendant. Had there been a new indictment found, and the defendant put upon trial on that, instead of the old one, the same matter which operated in arrest of judgment, must have constituted a good bar in the form of a plea.

In the case of *The People* v. *Goodwin*, 18 Johns. 187, it was held, that discharging the jury because there was no prospect of their agreeing during the term of the Court, did not exonerate the defendant from a trial by another jury. Though this decision was made to rest on the ground, that the defendant had not, in a legal sense, been put in jeopardy by the first attempt to try him, because no verdict was rendered, yet the case of *The People* v. *Barrett et al.* was quoted with approbation; and the withdrawing a juror, under the circumstances of that case, was viewed as " equivalent to an acquittal."

The Supreme Court of *Pennsylvania* held that the inability of the jury to agree, did not present such a case of necessity as would authorize the Court to discharge them, and that discharging them, for that reason, exempted the defendant from

liability to a subsequent trial. *Commonwealth* v. *Cook*, 6 Serg. & R. 577. The same Court also held, that, when the jury has been unnecessarily discharged, that matter may be pleaded in bar of another trial. *Comm.* v. *Clue*, 3 Rawle's R. 501. It is as to the effect of an unnecessary discharge of the jury that we quote the two last cases, and not as to what constitutes a good cause of discharging them. So, also, in *North Carolina*, the discharge of the jury without necessity acquits the prisoner, and on the ground that he has been once put in jeopardy. *State* v. *Garrigues*, 1 Hayw. 241. *The matter of Spier*, 1 Dever. 491.

The case of *The United States* v. *Shoemaker*, 2 M'Lean's R. 114, was an indictment against a mail-carrier, for feloniously taking letters, containing money, out of the mail. The defence set up was, that the defendant had been previously indicted for the same offence ; that, in the first prosecution, after the jury was sworn and evidence given, the district attorney entered a *nolle prosequi*, whereupon the jury was dismissed, and a judgment that the defendant go without day was rendered. The Court held that these proceedings barred the second prosecution.

The Courts of *Pennsylvania* and *North Carolina* differ from those of *New York* as to the meaning of the maxim and constitutional provision, that a man shall not be put twice in jeopardy for the same offence. The latter Courts understand it to mean, that he shall not be twice *tried;* and they view the " test, by which to decide whether a person has been once *tried*," to be the plea of *auterfoits acquit*, or *auterfoits convict*. The former Courts consider the hazard, danger, or peril in which a man shall not be twice placed, as having been once incurred by giving him in charge, on a legal indictment, to a regular jury, which has been unnecessarily discharged without rendering a verdict. And this is the interpretation which we give to that clause of our constitution, which privileges an accused person from being " twice put in jeopardy for the same offence."

It is obvious that the rule of construction and the " test," adopted in *New York*, sustain the Court in the conclusion to which they arrived in the case of *The People* v. *Goodwin*, namely, that in a case where the jury had been *necessarily*

May Term, 1844.

WEINZORPFLIN v. THE STATE.

discharged, the defendant might be tried by another jury. But it is equally clear, that the same interpretation and test will not support the decision in *The People* v. *Barrett et al.*,—that the defendant could not. be tried after the jury had been *unnecessarily* discharged; for the facts, though admitted to be "equivalent to an acquittal," would not sustain the technical plea of *auterfoits acquit.* Some other rule of interpretation and test must be sought to justify these two decisions, both of which are held by the Courts of *New York*, and by us, to be correct. The principle of construction adopted by the Courts of *Pennsylvania* and *North Carolina*, and also by the Circuit Court of the *U. S.* in *Shoemaker's* case, will solve the difficulty. That principle, as before observed, is, that a man who has stood upon his defence on a valid indictment, before a legal jury which has been discharged without good cause, has incurred the first peril, and shall not incur the second by a subsequent trial. A modification of the usual plea of *auterfoits acquit* must be the consequence of establishing this doctrine, so as to adapt the plea to the facts; or if the plea remain unaltered, the rules of evidence must so far yield as to allow an averment of an actual acquittal by a verdict, to be proved by a record showing a virtual acquittal by the unnecessary discharge of a jury without a verdict. The latter course would seem to be sanctioned by the case of *The People* v. *Barrett et al.* 1 Johns. R. 66.

In the case of *The United States* v. *Keen*, 1 M'Lean's R. 429, the indictment contained five counts. The jury found the defendant guilty on the four last counts, but said nothing as to the first. The Court allowed the district attorney to enter a *nolle prosequi* as to the first count, and rendered a judgment on the verdict. The validity of the verdict was questioned by the defendant on a motion for a new trial, and to set aside the verdict, for irregularity. The Court, in sustaining the verdict, founded the decision on the ground, that the entry of the *nolle prosequi* could not prejudice the defendant, as, if his motion for a new trial prevailed, the entry might be afterwards made at the option of the district attorney; and on the ground, that the Court judicially knew that the five counts were for the same offence, varied so as to meet the proofs, and that consequently a conviction on one count was

a conviction on all, and would bar a future prosecution for the same offence. It appears to us that if any difficulty existed in that case, the *nolle prosequi* did not remove it. If that entry could have any effect at all, it would have been to subject the defendant to another prosecution for the crime charged in the discontinued count. But it could not have that effect, if, as the Court decided, the offence charged in that count was embraced in the conviction on the other counts. The verdict was as complete and valid before as after the entry of the *nolle prosequi;* and it was valid because it was virtually a finding on all the counts.

In the cause before us, we cannot judicially know that the offences charged in the three counts constituted but one transaction. But we can easily conceive that the felonious intent charged in the two last counts was merged in the actual perpetration of the crime alleged in the first. And we have no doubt, that so strong is the presumption of the intention of the jury to acquit on the second and third counts, that the Court was authorized so to enter the verdict. And we cannot but think there was great remissness, both in the prosecuting attorney and the Court, in suffering the verdict to be entered of record in its present form. That the verdict was amendable, so as to make it express the real intention of the jury, is fully established by the case of *Reg.* v. *Virrier*, 12 Ad. & Ell. 317. And that case has a bearing upon the validity of the verdict as it stands. The case was an indictment for perjury, containing three distinct assignments of perjury. The jury found the defendant not guilty on the first assignment, and guilty on the second, saying nothing as to the third. There was a motion to amend the verdict, which, for reasons peculiar to that case, was overruled; but the Court refused to arrest the judgment on the verdict as it stood. Distinct assignments of perjury in the same count, are strongly analogous to the joinder of several counts in one indictment. If any one of the assignments, or counts, is good, though the others are bad, a general verdict is valid. It appears to us to be as necessary that a verdict should find as to all the assignments in a count for perjury, as it is that it should find as to all the counts in an indictment. There is also some analogy to the cause under consideration in an indictment for a crime which in-

May Term, 1844.

WEINZORP-FLIN v. THE STATE.

cludes one of lower degree, as murder, burglary, &c., and on which the jury has found a verdict of guilty of the lower offence, but said nothing as to the higher. Such a verdict was formerly held to be insufficient, but is now considered good. 1 Chitt. C. L. 641.

In view of these authorities, and upon principle, we have come to the conclusion that the defendant has been once put in jeopardy, within the meaning of the constitution, on the two last counts of the indictment; that, as to those counts, the proceedings against him are equivalent to an express verdict of not guilty; that he can plead these proceedings in bar of a future prosecution for the offences or either of them if they be different, charged in the two last counts; and, therefore, that this verdict must stand as it would have stood, had it, in addition to the finding of guilty on the first count, contained an express finding of not guilty on the two last counts.

The *nolle prosequi* of the second and third counts was a mère nullity.

The only remaining inquiry, under the motion in arrest of judgment, is as to the validity of the first count of the indictment.

The objection urged against that count is, that it does not describe the offence in the language of the statute on which it is founded.

The words of the statute are, "shall unlawfully and forcibly have carnal knowledge of a woman against her will." The terms of the indictment are, "feloniously did ravish and carnally know by force and against her will." There is not the slightest shade of difference in the sense of these two sets of words, except what arises from the different tenses; nor does the indictment depart widely from the language of the act. We are aware that great verbal nicety is required in describing statutory offences; and here again we regret, that the prosecuting attorney did not pay more attention to the statute, while he adopted the common law definition of the offence. *Chitty* says, "It is a general rule that all indictments upon statutes, especially the most penal, must state all the circumstances which constitute the definition of the offence in the act, so as to bring the defendant precisely within it." 1 Chitt. C. L. 281. This, we conceive, has been sub-

May Term,
1844.

WEINZORP-
FLIN
v.
THE STATE.

stantially done in the present instance. The same author adds, "And not even the fullest description of the offence, were it even in the terms of a legal definition, would be sufficient without keeping close to the expressions of the statute." *Ibid.* And *Hawkins* lays down the same rule. Hawk. b. 2, c. 25, s. 110. We do not understand this language to mean, that every word used in the statute, in describing the offence, must be copied into the indictment; but that those technical words which, in themselves, express the offence, or the intent of the offender, as *ravished, murdered, feloniously, burglariously,* &c., must be adopted. The particular departure from the language of the statute urged against the indictment is the omission of the word *unlawfully.* Hawk. b. 2, c. 25, s. 96, says that when *unlawfully* is used in a statute in describing the offence, the indictment must use it, or some other tantamount. *Feloniously* is substituted for it in this indictment, and is not only tantamount to it, but is a word of far more extensive and criminal meaning. The act complained of could not have been *feloniously,* and not *unlawfully,* done. This Court has heretofore decided, that omitting the word, *unlawfully,* did not vitiate an indictment for murder, though the statute, on which the indictment was founded, used it in describing the crime. It was held that the common law definition was sufficient. *Jerry* v. *The State,* 1 Blackf. 395. That decision is fully sustained by the case of *United States* v. *Bachelder,* 2 Gall. 15, and by *The People* v. *Enoch,* 13 Wend. 159. This last case was an indictment for murder founded on a statute. The indictment was drawn according to the common law form, and omitted the words, "when perpetrated from a premeditated design to effect the death of the person killed," which, in the statute, are descriptive of the offence. The Court sustained the indictment. We are aware that one or two *English* cases can be found which militate against the authorities referred to. But we adhere to the former decision of this Court. We think the first count of the indictment good, and that the Circuit Court committed no error in overruling the motion in arrest of judgment.

Before considering the motion for a new trial, we wish to advert to a decision made by a very eminent judge, whose opinions we regard, in the general, as safe guides for other

Courts, but with whose conclusion on the subject of the right of Courts to grant new trials, in cases of convictions of capital crimes, we cannot agree. We allude to the case of *The United States* v. *Gibert et al.* 2 Sumn. 19. The principle there attempted to be established is, that the clause of the constitution of the *United States*, which protects an accused person from being twice put in jeopardy of life or limb for the same offence, is a prohibition against granting him a new trial, after a conviction of a capital crime on a valid indictment, and by a regular jury. And the judge assumes that the maxim of the common law, from which the constitutional provision is borrowed, is also a similar prohibition, and furnishes the ground on which the *English* Courts have, of late years, refused new trials in capital cases. Directly opposed to this decision is the later case of *The United States* v. *Keen*, before referred to ; and with that we concur. Among various decisions reviewed and disapproved of by the distinguished judge alluded to, is that of *Jerry* v. *The State, supra.* Had the Court which decided that case, adopted the same train of reasoning which convinced the learned judge, they must have come to the conclusion that the Courts of this state cannot grant new trials even on convictions for misdemeanors. For if it be true, that the protecting clause in the constitution of the *United States*, and the original maxim of the common law, amount to positive prohibitions against releasing a person convicted of felony by a new trial, the corresponding clause in our constitution, which embraces all offences, would be a similar prohibition in all criminal cases whatever. And thus our citizens would be deprived of a privilege which all concede the common law allows ; and deprived, too, by a provision designed, as we believe, for their protection.

The Supreme Judicial Court of *Massachusetts*, in the case of *Commonwealth* v. *Green*, 17 Mass. R. 515, used the following language : "It appears by the *English* text books, and by several decisions cited in support of the position, that in cases of felony a new trial is not usually allowed by the Courts of that country. But whatever reasons may exist in that country for this practice, we are unable to discern any sufficient ground for adopting it here." In commenting on this passage, the judge says, "Now with the greatest deference for that

learned judge (Ch. J. *Parker*, who delivered the opinion of the Court,) I cannot admit that this language truly represents the state of the *English* common law doctrine on this subject. On the contrary, as I understand that doctrine, it is no matter of *practice* at all (usual or unusual) in respect to which the *English* Courts are at liberty to exercise any discretion, but it is a matter of power which a fundamental maxim of the common law prohibits the Courts from exercising."

We may be wrong, but we had thought that the whole doctrine of granting new trials in all cases, civil and criminal, had its origin merely in the *practice* of the Courts, as a substitute for the inadequate remedy afforded by the old writ of attaint, which lay at the suit of the king, and not at the instance of the party aggrieved. 3 Blacks. Comm. 404.—4 *id.* 361. And there is reason to believe that, formerly, the *English* Courts were in the *practice* of granting new trials in felonies as well as misdemeanors. In the case of *Rex* v. *Read*, 1 Lev. 9, the majority of the Court of King's Bench held this language: "New trials may be in criminal cases at the prayer of the defendant, where he is convicted, but not at the suit of the king where he is acquitted, no more in criminal cases than in capital." And in the case of *Rex* v. *Fenwicke* and *Holt*, *Ib.*, *Kelynge*, J., said, "No case could be shown of a new trial in a criminal case more than in a capital." In the same case, the Court, speaking of granting new trials, declared that "the *course* of the Court was the law of the Court." These cases, it is true, were not in felonies, but they show the opinion of the judges of the day, that new trials were sometimes granted in capital cases, and that the granting of them were matters of *practice*. Nor were the new trials here spoken of on account of a mistrial, but where the verdict was against evidence. *Viner*, in his Abr., title Trial, Q, g, says, "A new trial will not be granted where the defendant is acquitted in criminal and capital cases, but otherwise where he is convicted." *Blackstone* writes thus: "In many instances where, contrary to evidence, the jury have found the prisoner guilty, their verdict hath been mercifully set aside, and a new trial granted by the Court of King's Bench; for in such case, as hath been said, it cannot be set right by attaint." 4 Comm. 361. Both *Viner* and *Blackstone*

cite *Rex* v. *Read;* and if that case does not furnish the " instance" of a new. trial actually granted in a capital case, it sanctions the doctrine laid down by those authors. We are aware that at length, in 1781, the Court of King's Bench decided that new trials could not be granted in capital cases. 13 East, 416, note b. But that the decision turned upon the maxim, that a man should not be put twice in jeopardy of life or limb for the same offence, we are nowhere informed but in the case of *U. S.* v. *Gibert et al.* And we cannot but think such a principle of decision would have been a perversion of the maxim.

The motion for a new trial in the cause before us was founded, as we have before stated, on an alleged error in the Circuit Court in refusing to suffer a question to be put, having for its object to impeach a witness for the state, by showing that she had made a statement inconsistent with her testimony ; and also on the alleged ground that the evidence did not justify the verdict.

As to the first of these objections, it is sufficient to remark that the record does not show that the witness proposed to be impeached, made any statement in her testimony which could have been contradicted, either by a negative or affirmative answer to the question refused by the Court; nor does it appear that the witness to be impeached was interrogated in regard to the subject to which the question referred. It was right therefore to exclude the question.

In regard to the insufficiency of the evidence to justify the verdict, we can only say that had we been in the place of the jury, we might, perhaps, have come to a conclusion different from theirs. But, one witness swore positively to the perpetration by the defendant of the crime charged upon him. The jury were, by a well settled rule of the law, the exclusive judges of her credibility. If they believed her, they but acquitted their consciences in finding the defendant guilty. And after their verdict has undergone the revision and received the sanction of the Circuit Court on a motion for a new trial, we do not feel at liberty to disturb it on a question of the credibility of testimony.

*Per Curiam.*—The judgment is affirmed with costs.

*B. M. Thomas* and *O. H. Smith,* for the plaintiff.

*A. A. Hammond* and *S. Major,* for the state.