Nov. Term,
1854.

Wright
v.
The State.

---

## WRIGHT v. THE STATE.

Where a prisoner has been given in charge, on a legal indictment, to a regular jury, and the jury has been unnecessarily discharged, he has been once put in jeopardy, and the discharge of the jury is equivalent to a verdict of acquittal.

The failure to embody in the R. S. 1852 a provision in relation to Circuit Courts similar to section 325, p. 733, R. S. 1843, (which is substantially enacted in relation to Courts of Common Pleas by the act organizing them), is a *casus omissus* within the meaning of section 172, 2 vol. R. S. 1852, p. 383, and said section 325, p. 733, R. S. 1843, is therefore continued in force.

The discharging of a jury before verdict, by the Circuit Court, in a criminal case, against the will of the prisoner, on account of the expiration of the time fixed by law for the continuance of the term, is, under said section 325, unnecessary, and equivalent to a verdict of acquittal.

A jury, while engaged in the trial of a prisoner for murder, was discharged against the will of the prisoner, by the Circuit Court, by reason of the expiration of the time fixed by law for the continuance of the term, and the prisoner was remanded to jail to await another trial. The prisoner soon afterwards applied to the judge of the Court of Common Pleas of the county, for a writ of *habeas corpus*. The writ was granted, and, on the hearing, the foregoing facts having been made to appear, the judge remanded the prisoner to jail to await his trial in the Circuit Court.

*Held*, that by the R. S. 1852 (vol. 2, pp. 195-6, s. 725) the judge was compelled, upon the prisoner's petition, to award the writ, but, *held*, that upon the return of said facts, it was his duty to remand the prisoner to the Circuit Court, and that the latter Court might discharge the prisoner on motion, or he might plead the discharge of the jury in bar of a second trial.

Nov. Term, 1854.

WRIGHT
v.
THE STATE.

Monday,
November 27.

APPEAL from the judgment of Hon. *J. H. Mather*, judge of the *Elkhart* Court of Common Pleas.

HOVEY, J.— On the 11th of *October*, 1853, *Fleming Wright* was indicted for murder in the *Elkhart* Circuit Court. To this indictment he plead not guilty, and on the 14th of *October* a jury was impanneled to try the charge. The trial progressed until the succeeding *Saturday*, when the Court, holding that the legal term expired on that day, and being satisfied that the trial could not be closed on that day, discharged the jury, notwithstanding the objections of the prisoner, who insisted that the trial should proceed to its conclusion. The Court thereupon remanded the prisoner to jail, and ordered a *venire de novo*, returnable at the next term. On the 24th of the same month, *Wright* applied to the Hon. *Joseph H. Mather*, judge of the Court of Common Pleas, for a writ of *habeas corpus*. The writ was granted, and, on the hearing, the foregoing facts were made to appear, and the judge remanded the prisoner to jail, to await his trial in the Circuit Court. From the judgment remanding him to prison upon the hearing of the *habeas corpus*, *Wright* appeals to this Court.

The facts as presented by the record, require the investigation of two questions. First, what was the effect of discharging the jury by the Circuit Court? Secondly, what is the duty of a judge upon the hearing of a case under a writ of *habeas corpus*, where the return shows that the applicant is held in custody, to answer an indictment?

1. The constitution of the *United States*, and the constitution of this state, both provide that no person shall be put in jeopardy twice for the same offence. Similar provisions will be found in nearly all of the constitutions of the respective states. There is some diversity of opinion in the decisions of the different Courts as to what amounts

to being put in jeopardy; but we are satisfied that the ruling of this Court, in the case of *Weinzorpflin* v. *The State*, 7 Blackf. 186, is in accordance with reason and the current of authorities.

Whenever a person shall have been given in charge, on a legal indictment, to a regular jury, and that jury unnecessarily discharged, he has been once put in jeopardy, and the discharge is equivalent to a verdict of acquittal.

If a Court has the right, during the trial, capriciously to discharge the jury, and continue the cause until the next term, the liberty of those indicted for offences not bailable would be completely within the hands of the judge. He might, at every term, impannel, discharge and continue, and thus rob the prisoner of his liberty, by preventing a final investigation. It may be said, that such a position throws distrust upon judicial discretion. We do not wish to be so understood. But we can not regard that rule as wise or safe, which places arbitrary or unguarded discretion in the hands of any one, when it can be reasonably avoided.

We are aware that the Courts in *New-York* have gone to the other extreme, and have decided, in the case of the *The People* v. *Green*, 13 Wend. 55, that the Court might discharge the jury, after thirty minutes consultation, although the prisoner objected; that he might be again indicted and convicted for the same offence; and that the exercise of such discretion, in discharging the jury, could not be reviewed on error; but, with deference to that Court, we can not coincide with the learned judge who delivered that opinion. We think it would be trusting unguarded power where it might be seriously abused, and that more especially from the fact that they deny the correction of that abuse by resort to the higher Courts. The answer to the first question, then, turns entirely upon the discharging of the jury without the consent of the prisoner. Was the discharge necessary or unnecessary?

Section 332, 2 R. S. 1852, p. 113, authorizes the Court to discharge the jury, on account of the sickness of a juror, or other accident or calamity requiring their discharge, or by consent of both parties, or after they have been kept

together until it satisfactorily appears that there is no probability of their agreeing; but we have been unable to find any provision which will permit the Court to discharge the jury for the want of time to try the cause.

The counsel for the state insist that the discharge was necessary, as the regularly allotted time for the adjournment of the Court was about expiring, and as the act of 1853 required the same judge to open Court in the county of *Lagrange*, on the succeeding *Monday.*

By the R. S. 1843, s. 325, p. 733, it is provided that—

"If at the expiration of the time fixed by law for the continuance of the term of any Court, the trial of a cause shall be progressing, said Court may continue its sitting beyond such time, and require the attendance of the jury and witnesses, and do, transact, and enforce all other matters which shall be necessary for the determination of such cause; and in such case, the term of said Court shall not be deemed to be ended, until the cause shall have been fully disposed of by said Court."

In the 2 R. S. 1852, s. 32, p. 21, a similar provision is inserted, in the act organizing Courts of Common Pleas, but there is nothing said in the revision in regard to trials in the Circuit Court, although the necessity for such a provision for the business of that Court is far greater than for the former. The peculiar character of criminal trials, over which the Circuit Courts have exclusive jurisdiction, demands a similar section, so as to place it beyond the the possibility of counsel being able to postpone the execution of justice, by delaying or speaking a case into a continuance. We think, then, it is but reasonable to infer, that the failure to embody such a section in the R. S. 1852, in relation to Circuit Courts, was a *casus omissus*, and that being such, section 325, *supra*, is continued in force by the 172d sec. 2 R. S. 1852, p. 383, which provides, that "the laws and usages of this state, relative to pleading and practice in criminal actions, not inconsistent herewith, as far as the same may operate in aid hereof, or to supply any omitted case, are hereby continued in force." The position assumed by counsel, that s. 325 does not relate to practice,

is untenable. All that relates to the manner and time in which a case shall be conducted and tried, from its inception to final judgment and execution, is generally embraced under the title of practice.

By these provisions, the Circuit Court had the right to continue the case from *Saturday* until the following week, when it could have been finally disposed of; and the discharging of the jury without so doing, was unnecessary, and equivalent to a verdict of acquittal.

2. What was the duty of the judge upon the hearing of the *habeas corpus?*

The writ of *habeas corpus* was well known to the common law, and has been regarded by *English* jurists as one of the greatest safeguards to the liberty of the subject. Its great object is the liberation of those who may be imprisoned without just cause, and it has been so favorably regarded in this country, that the provisions of the *English* act, 31 *Charles* 2, chap. 2, have been substantially adopted by the several states. We have even gone further, and by the 27th section of the bill of rights in our constitution provided, that "the privilege of the writ of *habeas corpus* shall not be suspended, except in case of rebellion or invasion; and then only if the public safety demand it."

Although it is the privilege of every one who may conceive himself illegally detained in custody, to demand this writ as a matter of right, it by no means follows that the Court or judge before whom the cause may be brought, can in all cases investigate the merits of the detention; but we will not attempt, at this time, to draw the difficult line between those cases where the judge may or may not investigate the merits for the purpose of remanding or discharging.

So far as this case is affected by that question, sec. 725, pp. 195-6, 2 R. S., is sufficiently explicit to meet it. That section reads—

"No Court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

"First. Upon process issued by any Court or judge of the *United States*, where the Court or judge has exclusive jurisdiction; or,

"Second. Upon any process issued on any final judgment of a Court of competent jurisdiction; or,

"Third. For any contempt of any court, officer, or body having authority to commit; but an order of commitment as for a contempt, upon proceedings to force the remedy of a party, is not included in any of the foregoing specifications.

"Fourth. Upon a warrant issued from the Circuit Court or Court of Common Pleas, upon an indictment or information."

The facts in this case show that the prisoner was in custody, awaiting his trial under an indictment for murder, and we are clearly of opinion that although the discharging of the jury by the Circuit Court was equivalent to a *verdict* of acquittal, yet as the case was not finally disposed of, and as there was no release of the prisoner by any judgment of the Court, he must be regarded as in custody under the indictment. Had there really been a verdict of acquittal rendered by the jury, without further action by the Circuit Court, the judge of the Court of Common Pleas could not have discharged him. If he could, at this stage of the case, why not at any other? Why not even take the case from the hands of the jury in the midst of their investigation? Such is not the object or true meaning of our act of *habeas corpus*. See *The State* v. *The Sheriff*, 3 Green 68.—*Johnson* v. *The United States*, 3 McLean 89.

In the case of *The Commonwealth* v. *Deacon*, 8 Serg. and Rawle 73, the prisoners, *Roosevelt* and *Eddy*, were indicted for forgery, acquitted on some of the counts of the indictment, and upon the others the jury failed to return a verdict. The Mayor's Court committed them for trial on these counts, and the question as to the legality of their commitment was raised by *habeas corpus*. The Court, in delivering the opinion, said—" The indictment is still pending in the Mayor's Court. No judgment has been given on the verdict, nor do we know what judgment will be given. But

we know that the Mayor's Court has jurisdiction over the offence with which the prisoners are charged, and if they should give an erroneous judgment, remedy may be had by writ of error, which will bring the case properly before us." Prisoners remanded.

The judge of the Court of Common Pleas was compelled by statute, upon the petition, to award the writ, but upon the return of the facts above set forth, it was his duty to remand the prisoner to the Circuit Court. He has done so. That Court has still jurisdiction over the prisoner, and may discharge him on motion, or he may plead the discharge of the jury in bar to a second trial. *The Commonwealth* v. *Clue*, 3 Rawle R. 501.—*Weinzorpflin* v. *The State*, 7 Blackf. 194.

*Per Curiam.*—The judgment is affirmed with costs.

*J. L. Jernegan* and *T. G. Harris*, for the appellant.

*R. A. Riley*, *N. B. Taylor* and *J. Coburn*, for the state.