May Term, 1857.

GIBSON
v.
THE STATE.

(1) *Jolly* v. *The Terre Haute Bridge Co., post.*
(2) Counsel for the appellant cited 1 Hovenden on Fraud, pp. 145, 468; 2 *id.* pp. 4, 38, 157; *M'Cormick* v. *Malin et al.* 5 Blackf. 509.

---

## GIBSON *v.* THE STATE.

Indictment for murder. On the trial, a brother of the deceased testified that he had participated in the fight in which the mortal wound was given; that he had not seen a certain hatchet used by any one; that he, witness, had not used a deadly weapon during the melee; that he simply held a bowie-knife in his hand, but did not use it. With a view to his impeachment, he was asked the following question: "Did you, or did you not, in Dr. *B.'s* office in this town, on the evening of the fight, in the presence and hearing of the doctor and one *M.*, say that one of the persons engaged in the fight, would not fight again, as you had sunk the poll of the hatchet in his head." The state objected, and the Court sustained the objection. *Held*, that this was error.

A refusal to grant a new trial upon the ground that the evidence does not sustain the verdict, will not be considered erroneous, except in extreme cases.

To obtain a new trial, upon the ground of newly discovered evidence, the defendant in a criminal case, must, in addition to his own affidavit, either produce the affidavit of the proposed witness, stating what he will swear, or . account for its absence.

The absence of such affidavit is sufficiently accounted for by the fact that the witness is not in the state, and that the defendant has been in prison and without the means to find him.

The Court might, perhaps, of its own motion, continue the cause pending a motion for a new trial, to give the prisoner a reasonable time to procure such affidavit.

*Friday, June 5.*

APPEAL from the *Morgan* Circuit Court.

STUART, J.—Indictment against *William* and *Robert Gibson*, for the murder of *Robert Mann*. The prisoners joined in the plea of not guilty. *Robert Gibson* was ac-

quitted. The verdict as to *William Gibson* was, guilty of manslaughter, and imprisonment in the penitentiary twenty-one years. The proper steps were taken by counsel for the prisoners to place the evidence upon the record, by motions for a new trial and exceptions. *William Gibson* appeals.

The errors assigned are—

1. The exclusion of certain evidence.

2. Overruling the motion for a new trial on the weight of evidence.

3. In overruling that motion based upon the ground of newly discovered evidence.

It will be seen that the verdict is the utmost limit of the law in cases of manslaughter. It is hence to be inferred that the case is one of great aggravation.

On looking into the evidence, we find the facts to be briefly these:

There was a show at *Martinsville*, on the day of the alleged murder. It appears that *Frederick Mann*, a brother of the deceased, kept a stand for the sale of liquor. A difficulty occurred between *Robert Gibson* and one *Harbert*, who attended the stand assisting *Mann*. A scuffle ensued. *Robert Mann* interfered, and he and *Robert Gibson* clinched. *Gibson* got the better, and they were separated. *Robert Gibson* renewed the combat by throwing a club at *Robert Mann*. Up to this point, it does not appear that *William Gibson* had interfered in any way. Upon the second rencounter it appears to have assumed the form of a clan fight: the *Manns*, three brothers, and *Harbert*, their brother-in-law, on the one side, and the *Gibsons* on the other. One of the *Manns* drew a knife, another used an axe, a third had a bowie-knife, and on the same side bricks and tumblers were used early in the combat. The evidence goes strongly to show that *William Gibson* had his knife open and ready from the beginning, but that he did not use it until the *Manns* commenced using the hatchet and other weapons. As might be expected, there is great confusion as to the exact order of events. But the preponderance of evidence is strongly in favor of the

verdict, that the fatal blow was struck by *William Gibson* during the second rencounter. The wound was in the abdomen, and, according to the medical witness, necessarily mortal.

The errors assigned will be noticed in their order.

1. The exclusion of evidence.

*Frederick Mann*, brother of the deceased, was asked, with a view to his impeachment, " Did you, or did you not, in Doctor *Blackstone's* office, in this town, on the evening of the fight, in the presence and hearing of the doctor and one *Miles*, say that one of. the persons engaged in the fight with your brother, the deceased, would not fight again, as you had sunk the poll of the hatchet in his head ?" The state objected, and the Court sustained the objection. The prisoner excepted.

We think the ruling erroneous. The witness had participated in the fight on the side of the *Manns*. He had expressly said in his examination, that he had not seen the hatchet used by any one. If he had elsewhere said that he himself had used it on the head of one of the *Gibson* clan, it was clearly a matter pertinent to the issue, and went strongly to his credibility. Besides, he was himself a participant in the fight about which he was testifying. It was the same fight of which he boasted, in the presence of *Blackstone* and *Miles*, that he had sunk the poll of the hatchet into the head of one of the persons engaged. The whole transaction—every part of the *res gesta*—was material to the prisoner, as going to show on which side the provocation was—which first resorted to the use of deadly weapons. According to this man's evidence on the stand, he had not used a deadly weapon during the melee. He had simply held the bowie-knife in his hand, but had not used it. Nor had he seen any one use the hatchet. According to his boasting at *Blackstone's* office, he sank the poll of the hatchet into the head of his antagonist. This discrepancy was most material for the prisoners, both as showing the weapons against which the *Gibsons* had to contend, and as a test of the credibility of the witness.

Furthermore, the *Manns* were three brothers and a brother-in-law—four to two. If, in addition, the *Manns* carried on the combat with deadly weapons, it might go far to justify the use of such weapons by the *Gibsons*.

2. The Court erred in overruling the motion for a new trial on the weight of evidence.

It is in evidence that *Frederick Mann* went to his wagon and took his bowie-knife out of a basket. He had it during the second rencounter. This he admits in his evidence, but says he did not use it on any one, and that the blood on the bowie-knife was from a blow on the nose which he, *Frederick*, had received in the melee. Other witnesses say the fatal blow was given with a large and bright blade in whose hands they are not positive, but think it was by *William Gibson*. *William Gibson* and *Frederick Mann* do not seem to have been distinguished from each other by some of the witnesses. For *Harper* and others testify that they saw *William Gibson* go to the wagon and get the bowie-knife, and on his return deal the fatal blow. Yet it is clear that *Frederick Mann* was the person who took the knife from the wagon. If *Harper* is correct then, the probability is that in the confusion and change of position by the combatants, *Frederick Mann*, in striking at *Robert Gibson*, inflicted the fatal wound on his brother with the bowie-knife. There is other evidence corroborating that hypothesis.

Still we think the preponderance is in favor of the verdict; and even if the preponderance were otherwise, it has long been the settled rule of this Court not to disturb it. *Weinzorpflin* v. *The State*, 7 Blackf. 186.—*Ledley* v. *The State*, 4 Ind. R. 580.

3. It is urged that the Court erred in overruling the motion for a new trial on the ground of newly discovered evidence.

In support of the motion, *Gibson* filed his own affidavit, stating in substance that he could prove by one *Cook*, who was sitting on horseback near by during the fight, that the mortal blow was struck by one of *Mann's* brothers; that he could further prove by one *Rice*, that *Frederick Mann*,

immediately after the fight, came up the street from where it occurred, inquiring for a doctor—that his brother was killed; and that *Frederick* was then bloody, and held in his hand a bowie-knife covered with blood; that he believes the facts to be true; that this evidence did not come to his knowledge until after the case was submitted to the jury; that he was in jail from the killing till the trial, and without means to employ any one to prepare his case, or collect evidence. He also filed the affidavit of one *Hobbs*, who swears that *Cook* now lives in *Harrison* county, in the state of *Missouri;* that after the killing and before he left for *Missouri*, *Cook* told *Hobbs*, that he sat by on his horse, and saw the fight between the *Gibsons* and *Manns*, on the 2d of *August*, 1855; that he saw one of the *Manns* take a knife from the wagon, with which he stabbed his brother; that he, *Cook*, did not want it known that he had seen this, lest he should be detained as a witness and prevented from moving. Also, the affidavit of *Rice*, stating what he would swear, substantially as stated in *Gibson's* affidavit, as to seeing *Frederick Mann* bloody, with the bloody knife, &c. Also, the affidavit of *Robert Gibson*, that *William* had no bowie-knife that day, but only an ordinary pocket-knife; that after the fight there was no blood on his person or clothes, &c.

The Court overruled the motion on that ground also, and *Gibson* excepted.

The proper practice would have been to move to continue the case at that point, to give the prisoner time to procure the affidavit of *Cook*, as to what he would testify. At the close of the trial, the term of two weeks was too far spent to give the prisoner time to procure *Cook's* affidavit. His motion for a new trial must be made at that term, or not at all. *Romaine* v. *The State*, 7 Ind. R. 65. He had been in prison, and it could not be said he was lacking in diligence. *Rosencrants* v. *The State*, 6 Ind. R. 409. The killing occurred *August* 2, 1856—the trial, *November*, 1856.

The rule does not require an impossibility. To obtain a new trial on newly discovered evidence, he must, in addi-

tion to his own affidavit, either produce the affidavit of the proposed witness, stating therein what he will testify, or account for its absence. *Mc Queen* v. *Stewart*, 7 Ind. R. 535. Here, the absence of *Cook's* affidavit was sufficiently accounted for by the fact that he was not in the state, nor the prisoner in a position to find him.

In the spirit of the new code, of giving parties such relief as the facts warrant, the Court might, perhaps, of its own motion, have continued the cause on the pending motion for a new trial, to give the prisoner a reasonable time to procure the affidavit of *Cook*.

If *Cook* would testify to what the prisoner and *Hobbs*, in their affidavits, state he would, the grounds for a new trial and the probability of changing the result would be very strong.

Nor should it be concealed, that the punishment inflicted, in this instance the utmost limit of the law, is severe in the extreme—perhaps vindictive. If the *Gibsons* were in fault in beginning the disturbance, the *Manns* were the first to draw deadly weapons. As is usual in such rencounters the blame was mutual. It conduces to no sound public policy, to inflict the utmost rigor of the law on those who oppose hatchets and bowie-knives with like deadly weapons. The moral effect of punishment is paralyzed by excess and severity. It is the certainty and the careful adaptation of the penalty to the circumstances of each offense, which alone convey weighty and wholesome impressions.

We are very clear, that on both the rulings noticed, in addition to the severity of the penalty, the prisoner is entitled to a new trial.

*Per Curiam.*— The judgment is reversed. Cause remanded for further proceedings.

*J. W. Gordon* and *D. McClure*, for the appellant.

---

(1) Mr. *Gordon*, for the appellant, cited authorities to the first and third points in this case, as follows:

1. *The Queen's case*, as cited in 1 Greenl. Ev. s. 462, note 1; Roscoe's Cr. Ev. p. 181, and cases cited; *Id.* 182, note 2; *Thomas* v. *David*, 7 C. & P. 250; *De Sally* v. *Morgan*, 2 Esp. 489; Phil. Ev. 938, 8th ed.

May Term, 1857.

3. *Rosencrants* v. *The State*, 6 Ind. R. 409; *Spence* v. *The State*, 8 Blackf. 281; *Taylor* v. *The State*, 4 Ind. R. 540; *The Newcastle, &c., Railroad Co.* v. *Chambers*, 6 *id.* 346; *Romaine* v. *The State*, 7 *id.* 63; *Nagle* v. *Hornberger*, 6 *id.* 69.