SNEED, J.,
delivered tbe following dissenting opinion;
The prisoner appeals in error from the judgment of the Criminal Court of the County of Davidson, upon a conviction of voluntary manslaughter. He demands his discharge' upon the ground that he has been twice put in jeopardy of life or limb, for the same offense. He was indicted in March, 1869, for the murder of John Perry, and was arraigned on the 27th of June, 1870, before Judge Smith, the then presiding judge of said court, and thereupon entered the plea of not guilty, when a jury was regularly impaneled and sworn to try the issue then and there joined between the prisoner and the State of Tennessee. The testimony was heard, and the argument of counsel also, and the court charged the jury, and they retired to consider of their verdict.
These successive stages are shown by the minutes of the court to have transpired between the 27th of June and the 30th of the same month, both inclusive, and this much of the proceeding became a record by the regular signature of the presiding judge to the minutes of the court. No subsequent entry showing the progress of the cause, or the final result of the trial, is authenticated by the signature of the judge; nor does the signature of the judge before whom the prisoner was tried, appear again to the minutes during said term, or ever after the said 30th day of June, 1870.
The indictment is a valid one upon its face. At the September Term, 1871, before Judge Frazier, the successor in office of Judge Smith, the prisoner was again brought to the bar of the court to be again put upon *504 his trial. He filed a special plea of once in jeopardy, and demanded his discharge upon the ground that he had before been arraigned and tried for the same offense. Upon this plea the State took issue, and under the order of the court it was submitted to a jury, whose verdict was in favor of the State. And here it may be observed, that, as the issue presented a mixed question of law and fact, I see no objection to this mode of proceeding. The court thereupon proceeded to try the prisoner upon the indictment. He again, by his counsel, demanded his discharge, and declined to plead again to the indictment. The court directed the plea of not guilty to be entered, and the trial proceeded to a conviction of the prisoner.
Upon the trial of the special plea of once in jeopardy, the' State introduced as a witness the clerk of the court, the prisoner objecting. The clerk stated that he was the clerk of the said court in June and July, 1870, when the prisoner was tried before Judge Smith, and that he is still clerk; that he made the entries showing the progress of said trial; that the prisoner, Patrick Moore, now at the bar, is the identical person arraigned and tried in June and July, 1870, before Judge Smith; and that the indictment and the offense are the same. He further stated that there are no other minutes in relation to said trial, which are signed by the then presiding judge. The Attorney-General asked the witness to read all other entries on the minutes in relation to the trial of the prisoner, begun on the 27th of June, 1870, and not signed by the then presiding Judge. The prisoner objected, the objection was overruled, and the clerk thereupon proceeded to read the entries made on the first of July, as follows:
*505 State v. Patrick Moore, } Murder.
Came again the Attorney-G-eneral of the State, and the jury heretofore impaneled in this cause, came here into open court, and not having agreed upon a verdict, were again respited, and placed in charge of Jos. L. Bryant, an officer of this court, who being duly sworn according to law to take charge of said jury, and keep them separate and apart from all other citizens whatsoever, until their return into court at 9 o’clock to-morrow morning.
And the said witness then read the entry of July 2, 1870, as follows:
The State v. Patrick Moore, } Murder.
Came again the Attorney-General for the State, and the defendant in custody of the Sheriff, and the jury heretofore impaneled in this cause, returned here into open court and renewed the consideration of the same; and the jurors aforesaid, upon their oaths aforesaid, do say that they can not agree in a verdict. It is therefore considered by the court, with the consent of the prisoner, that the jury be discharged, and a mistrial entered in said cause; and thereupon the defendant was remanded to jail.
The witness further stated that he was the custodian of the records of said court, and that the entries were made by him as the orders were given by the court; that the facts related actually transpired; but that the said minutes of the first and second of July were never read over, examined or signed by the Judge; that Friday and Saturday were the said first and second days of July, and that the judge sickened on the following Monday after^ and died on the following Thursday.
*506 The witness was then asked by the Attorney-General to detail the proceedings had in said cause on the said first and second days of July, which he was permitted to do, over the objections of the prisoner. He stated that the court was duly opened Friday, and considerable business transacted; and the jury who had the prisoner’s case in charge not agreeing, was respited until Saturday morning; all of which proceedings were entered by him on the minutes that night.
On Saturday morning the judge appeared, the court was opened, but the minutes of the previous day were not read, approved or signed by the Judge. After some time, the jury came into the court, were called over, and said they could not agree, and that there was no chance for them ever to agree; upon which the judge asked the prisoner, or his counsel, if he would consent to a discharge of the jury, when one of his counsel arose and said that he consented to a discharge of the jury. Whether he conferred with the prisoner upon the subject, or not, the witness does not know. The court thereupon ordered the jury to be discharged, and remanded the prisoner to jail.
The court was soon after adjourned until the following Monday morning. The proceedings of Saturday were also entered by the witness upon the minutes, but they were never read, approved or signed by the judge, who, as already stated, was taken sick on Monday, and died on the following Thursday. To all this testimony the prisoner objected.
Upon this character of testimony as to a judicial proceeding involving the life of a citizen, the prisoner was denied the benefit of his plea that he had been once be *507 fore in jeopardy upon this identical charge; and by these memoranda of the clerk, and by his confirmatory oral testimony, it was permitted to be shown that the prisoner consented to the discharge of the jury which had been charged y/ith his deliverance. In my opinion, such a fact could only be shown by a record made up and perfected by all the solemn sanctions which the law has thrown around the record of a judicial proceeding involving the life or liberty of a citizen. The minutes of a court are the memoranda of what takes place in court, made by authority of the court. From these minutes the record is afterwards made up: 2 Bouv. L. D., 183. To be valid, a judicial judgment must be given by a competent judge or court, at a time and place appointed by law, and in the form the law requires. To give certainty, authority and verity to the judgments of the courts of record in this .State, it is the imperative mandate of the law that the minutes of the court shall be read each morning in open court, and signed by the judge: Code, 4101. A single line of legislation could have given verity to a record by the attestation of the clerk, but it has not been done. And in the construction of this statute, this court has held, upon mere questions of property involving the titles of men to chattels and to land, that the minutes of a court purporting to give its orders and action and decrees, which is not sanctioned and approved by the signature of the judge presiding, is a nullity, and proves nothing: Johnson v. Johnson, 2 Heis., 521. I could not hold otherwise, when human life or liberty is imperilled. If this be so in regard to the written memoranda of judicial proceedings unsanctioned by the signature of the only per *508 son who, under the law, can impart to them the verity and dignity of a record, what a leap in the dark it would seem, to permit the acts and orders and decrees of a judicial tribunal which are not lost or destroyed, but merely void or incomplete, to be established by parol. We are not permitted to explain private written contracts by parol, and a judicial proceeding should not be degraded to a lower dignity than a deed or a contract. I take it to be a principle as old as the common law, that an imperfect record can not'be assisted by evidence dehors the same: Otey v. Rogers, 4 Ired., 589; Wade v. Odeneal, 3 Dev., 423; 1 Wash. C. C., 330, unless in the cases specified by statute where clerical mistakes and omissions from inadvertence may be corrected by the court whose judgments are thus found to be defective. It is unnecessary to advert to the abuses, the evils and confusion which would inevitably follow the establishment of such a precedent. I hold, therefore, that there is absolutely no evidence before us that the prisoner ever consented, either by himself or his counsel, to the discharge of the jury, which had been lawfully and regularly charged with his deliverance upon a valid indictment on the 27th of June, 1870.
It remains to be considered, then, what was the effect of that proceeding upon the rights of the prisoner in his subsequent arraignment, in September, 1871. He stands upon the constitutional guaranty, that no person shall, for the same offense, be twice put in jeopardy of life or limb:” Const. Tenn., Art. 1, s. 10. When a jury, lawfully impanelled and sworn, are charged' with his fate, his jeopardy begins. That jury may be law *509 fully discharged by the prisoner’s consent, or for any of the causes recognized and approved in the law, and this shall be no legal impediment to his subsequent trial. But such a lawful discharge must be made to appear.
The jeopardy of a prisoner is when a trial jury is sworn and impanelled to try his case upon a valid indictment, and such jury has been charged with his deliverance: 1 Bailey, 655; 7 Black., 191; 1 Gray, 490; 8 Serg. & R., 586; 1 Bish. Cr. L., § 660. And so jealous are the courts in protecting this right, that it has been held, and has been accepted everywhere as a principle of criminal jurisprudence in this country, that where the legal bar has once attached, the government can not avoid it by varying the form of a charge in a new accusation. If the first indictment or information were such that the accused might have been convicted under it, on proof of the facts by which the second is sought to be sustained, then the jeopardy which attached upon the first must constitute a protection against a trial on the second: 1 Green., 360; 12 Pick., 504; 17 Wend., 386; 19 Ohio, 423; 7 Conn., 414; Cooley C. L., 338:
We have in this case, then, the valid and undoubted record evidence that Patrick Moore, the prisoner at the bar, was put upon his trial before a competent court, upon a valid indictment, and that a jury, lawfully im-panelled and sworn, was charged with his deliverance, on the 27th June, 1870; but we have no evidence that said jury was ever lawfully discharged. His jeopardy, therefore, in the sense of the constitution and the law, *510 was complete and perfect. We have the testimony before us, also, that this same person was brought to trial upon the same indictment, at the September Term, 1871, and that he then and there demanded his discharge upon the authority of the constitutional guaranty that no person shall for the same offense, be twice put in jeopardy of life or limb — a guaranty which, under the organic law of this country, can not be denied to the peasant or the prince, to the lofty or the lowly. Upon such a case, whatever his crimes may be, the law adjudges him to be free. The view of this question presented by the majority of the Court, has much force in it; but, in my judgment, the reasons are stronger on the other side. The discharge of a jury is a judicial act; the consent of the prisoner to such discharge enters into and becomes a necessary part of such a judicial act, and must be -matter of record, and a judicial record must prove itself. With the greatest respect and deference to the opinions of my learned brothers of the bench, I can not assent to a doctrine that seems to permit the proof of a solemn judicial act of a court of record, otherwise than by a judicial record. To the argument based upon the abuses and inconveniences which might follow the adoption of my view of this question, it would seem sufficient to reply, “noliomus mutare leges Anglice.”
I am of opinion that the prisoner is entitled to his discharge.