Hoskins *vs.* The State of Georgia.

No. 14.—Wm. Hoskins, plaintiff in error, *vs.* The State of Georgia.

[1.] Offences differing from each other and varying in their punishment, may be included in the same indictment, and tried at the same time, provided they be of the same nature and differ only in degree; as, for instance, the *forging* of an instrument, and the *uttering* and *publishing* it as *true,* knowing it to be *false.*

[2.] Upon an indictment for forgery, it is competent to prove that the writing was actually passed, for the purpose of establishing the fraudulent intent with which it was made.

[3.] As a general rule, in a criminal case, the State will not be allowed to reopen the testimony, after the Solicitor General has stated to the Court that the evidence is closed. If, however, this is inadvertently done, and application is immediately made to tender further proof, it may be received, provided, no motion has been made in behalf of the defendant, no evidence introduced, and his witnesses have been discharged in consequence of the declaration.

[4.] As to the right of the Court to interfere in directing and controlling the litigation before it. *Quere?*

[5.] To constitute a forgery of an order for the delivery of goods, within the *first* section of the *seventh* division of the Penal Code, it is not necessary that the person whose name is forged, have goods in the hands of the drawee.

Indictment for forgery, in Baker Superior Court. Tried before Judge Warren, December Term, 1851.

The indictment in this case was for forging an instrument, of which the following is a copy:

" Mr. Hoarey—Please let William Hoskins have fifteen dollars' worth in your store, and you will oblige me. October 29th, 1851.                                    H. W. Vines."

The first count set forth the instrument, calling it an order, and charged defendant with forging it. The second was similar, except that the instrument was called an order or bill. The third count, was for passing as true, or uttering the forged instrument. The fourth and last count was for having said forged

Hoskins *vs.* The State of Georgia.

instrument in his possession, with intent fraudulently to pass the same.

On the trial, counsel for defendant moved the Court to compel the Solicitor General to elect upon wh'ch of the counts he would try the prisoner; which motion being overruled, defendant's counsel excepted.

On demurrer to the third and fourth counts for insufficiency, they were stricken out by the Court, and the prisoner put upon trial on the two first counts.

The State proved that defendant wrote the instrument, and then proposed to prove by the clerk of Mr. Hora that prisoner presented it at the store and obtained the amount it called for, in goods and money. Counsel for defendant objected to this testimony, on the ground, that there was then no count in the indictment for " passing " or " uttering " the forged instrument. The Court overruled the objection, and defendant excepted.

The Solicitor General announced that he had closed his case, when the presiding Judge, in the presence and hearing of the Jury, suggested to the Solicitor, " if he had not better offer the order in testimony? " To which proceeding, prisoner excepted, 1st. For irregularity and interference by the Court; and 2d, Because the State had closed, and it was too late to offer other evidence.

When the case was closed, counsel for prisoner asked the Court to charge the Jury, that this indictment could be sustained only under the 9th or 10th section of the VIIth. division of the Penal Code; that it could not be under the 9th, because the instrument was not " a note, bill, draft or check," nor under the 10th, as that section made provision only for such " other writing not herein provided for ; " and there was no allegation in the indictment that this was such a writing as was not specially provided for ; that the proof made out a different offence from that charged in the indictment, being the offence specially provided for in the 14th section of the same division; and for which offence, prisoner could not be found " guilty under this indictment."

The Court refused so to charge, but on the contrary, charged

the Jury, "that the indictment was well founded under the said *tenth* section, without any such allegation as that required by counsel for prisoner ; that the indictment was maintainable under the 10th or the 14th section, and the prisoner might be found guilty under either, provided the proof sustained the charge.

To which refusal to charge, and charge as given, defendant's counsel excepted.

R. H. CLARK, for plaintiff in error.

Sol. Gen. LYON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

William Hoskins was tried for the offence of forgery, in the Superior Court of Baker County. The indictment contained four counts : 1st. For *making* a certain forged instrument, therein set forth, called an order ; 2d. Substantially the same as the first, except that the writing alleged to be forged, was termed an *order* or *bill ;* 3d. For *uttering* or *passing* the paper ; and 4th, For having the same in defendant's possession with intent fraudulently to pass the same.

Before the indictment was read to the Jury, counsel for the accused moved the Court to compel the Solicitor General to elect upon which one of said several counts he would try the prisoner, which motion was overruled, and this is alleged as error. Counsel for the defendant then demurred to the 3d and 4th counts, as insufficient in law, for a conviction for any offence, which demurrer was sustained by the Court. The indictment was then read, consisting of the two first counts only ; the others being stricken out.

[1.] Was the Solicitor General compelled to elect which count he would proceed upon ?

In *Bulloch vs. The State,* (10 *Geo. Rep.* 47) this Court held, that where there are several counts in an indictment, charging different grades of the same offence, with punishments differing in degree only, *but of the same nature,* and the Jury return a

general verdict of guilty, the judgment will not be arrested, but the Court will award judgment for the highest grade of offence charged in the indictment.

And such, we understand to be the general tenor of the authorities. *Benjamin Rynders*, of New York, being indicted for forgery, a similar motion was made by his counsel, to the one now under consideration. Chief Justice *Savage*, in delivering the opinion of the Court, said, that there would be an incongruity in incorporating in the same indictment, offences of a *different character*, such, for instance, as forgery and perjury, could not be denied; and that in such a case, a Court would refuse to hear a trial upon both, there could be no doubt. But that, when offences of the *same character*, differing only in degree, are united in the same indictment, the prisoner may, and ought to be tried on both charges at the same time. And such was adjudged to be the case then before the Court. The prisoner was indicted for *forging* the check and also for *publishing it as true*, knowing it to be false. These were admitted to be different offences and were punished with different degrees of severity, but were nevertheless held to be properly united, both in the indictment and the trial. The prisoner might be convicted of one and not of the other. So of murder or manslaughter, of grand and petit larceny, of assault and battery, and an assault with intent to murder; in which cases, no Court would refuse to try the prisoner upon all the offences charged. 12 *Wend.* 425.

But suppose it were otherwise, the two last counts in the indictment being, upon demurrer, stricken out, there was really nothing left but the charge of forgery.

After the witness, George W. Sutton, was sworn, he was asked by the Solicitor General to tell all he knew about the prisoner's having passed to him, as the clerk of Hora, the order alleged to have been forged, and what he gave him out of the store on said order? This question was objected to, because it was intended to elicit testimony to prove that Hoskins had *passed* the instrument, when he was only indicted for *making* it. The objection was overruled, and the interrogatory directed to be answered, and this assigned as error.

[2.] The order, which is the subject matter of this prosecution, purported to have been drawn by Hiram W. Vines, on a merchant by the name of Hora, requesting the latter to let the defendant have fifteen dollars' worth of goods at his store. The indictment charged, that the forgery was perpetrated with intent to injure the ostensible maker, Vines. A. J. Swinney, a witness previously sworn on the part of the State, testified that he had furnished the accused with the paper upon which this order was written. Now, the evidence of Sutton was competent for the purpose of showing that the order was actually passed, and thereby establishing the *quo animo*, or intent with which it was forged Besides, by tracing the *custody* of this forged instrument to Hoskins, in connection with the fact that the paper had been supplied to him upon which it was written, it demonstrates the truth of the charge in the indictment, that he was the forger.

Before the Solicitor General had tendered in evidence the order, he announced that he had closed the case, when the presiding Judge suggested to him publicly and in the hearing of the Jury, that he had better offer the instrument in evidence. It was then introduced and allowed to be read, to all of which, counsel for the prisoner excepted.

[3.] We recognize the rule, and are not disposed to relax it, that after the testimony has closed on the part of the State, in criminal trials, that it should not be re-opened. It will not do to allow to any party the right to introduce evidence at any time, at his own election, and without reference to the stage of the trial on which it is offered. It is obvious that by permitting such a practice, the proceedings of the Court would be often greatly embarrassed, the purposes of justice obstructed, and the parties themselves be surprised by evidence destructive of their safety, and against which they could not guard. To prevent such mischievous consequences, all Courts find it necessary to establish some fixed general rules on the subject.

But here the State had not closed; there was the *locus penitentiae*. The *intimation* which fell from the Bench, was cotemporan-

eous with the announcement by the State's attorney.   Suppose the suggestion had proceeded from the associate counsel, instead of the Court, and when the Solicitor General announced that he had closed, his associate  had  said, No, we will offer the order first, to the Jury.   Would there be any  doubt  in  that case ? We apprehend not.   The fact that  the  suggestion  came  from the Court, can make no difference.   No motion had been made, nor testimony tendered  on  the  other  side, and the  witnesses were not discharged by reason of this declaration.

[4.] As to the right of the Court to  interfere  in the manage-ment  of a cause, civil  or  criminal, in reforming  the pleadings and directing the  necessary  proofs to be adduced ;  in short, in assuming the general superintendence and control of the  litigation before  it, it is a  point of  extreme delicacy  with which we are reluctant to interfere.   We are not inclined to deny the power, *in toto ;* still less, to encourage its exercise.   We see nothing in the present case to  demand  imperatively the corrective interpo-sition of this  Court.

[5.] When the testimony had closed on the part of  the State, counsel for the prisoner asked the Court to charge the Jury, that this indictment could only be sustained,  either under the 9th or 10th sections of the 7th  division  of the  Penal  Code ; that it could not be sustained under the 9th, inasmuch as  the writing charged  to  be  forged, did not answer to the  description of in-struments designated in that section ;  that it could not be  sup-ported under the 10th, as  that only  made provision for " such other writings as had not been previously  designated," and that there was no allegation in  the  indictment  that this was such a writing as was not otherwise  provided for,  which averment was necessary ;  that an offence could  not be established  under  the tenth section, if  testimony showed that it was elsewhere provided for, and that it appeared from the  evidence, that the offence,  if any, came under the  14th  section  of the division  of  the Code against forging and  counterfeiting, and  that consequently,  the prisoner could  not be convicted at all under this  indictment.

The Court declined to make these several charges, but on the contrary, and in lieu thereof, instructed the  Jury, that the indict-

ment was well founded under the 10th section of the 7th division, without any such allegation as that contended for by prisoner's counsel, and that it was under this section that the bill of indictment was preferred. The presiding Judge farther stated, that an indictment, if supported by the proof, was maintainable either under the 10th or 14th sections, and that the prisoner was also subject to indictment and to be convicted under the 14th section, if the proof was sufficient; and that if they believed the prisoner forged the writing in question, they could find him guilty, under the indictment.

Counsel for the defendant excepts, and says that the Court committed error in declining to charge as requested, and also, in the charge as given.

[4.] It is indispensably necessary to a proper understanding of the various points embraced in this last assignment of error, that I should transcribe the 1st, 9th, 10th, and 14th sections of the 7th division of the Penal Code of Georgia.

Section 1st enacts, " If any person or persons shall falsely and fraudulently make, forge, alter or counterfeit, or cause or procure to be falsely and fraudulently made, forged, altered or counterfeited or willingly aid or assist in falsely and fraudulently making, forging, altering or counterfeiting, any audited certificates, or other certificate issued or purporting to have been issued by the Auditor General, or other officer authorized to issue the same, or any order or warrant issued, or purporting to have been issued by the Governor, or the President of the Senate or Speaker of the House of Representatives of the General Assembly of this State, or by any officer of the government, or authorized person, on the treasury of said State, for any money or other thing, or any warrant for land issued, or purporting to have been issued by the Justices of any Land Court, or by any other tribunal, officer or person, authorized to do so within this State, or any certificate, draft, warrant, or order, from any of the public officers of this State, issued or purporting to have been issued under or by virtue of an Act or Resolution of the General Assembly of this State; or any certificate, draft, order, or warrant issued, or purporting to have been issued by any Court, officer, or person authorized to draw on

Hoskins *vs.* The State of Georgia.

the treasury of this State, or for public money wherever the same may be deposited ; or any deed, will, testament, bond, writing obligatory, bill of exchange, promissory note, or order for money, or goods, or other things of value; or any acquittance or receipt, or any indorsement or assignment of any bond, writing obligatory, bill of exchange, promissory note, or order for money or goods, or other thing or things of value, with intent to defraud the said State, public officer or officers, Courts, or any person authorized, or any person or persons whatever ; or shall utter or publish as true, any false, fraudulent, forged, altered, or counterfeited, audited certificates, Governor's, President's, Speaker's, public officer's, Court's, or duly authorized person's, certificate, draft, warrant or order, so as aforesaid issued or purporting to have been issued, or any deed, will, testament, bond, writing obligatory, bill of exchange, promissory note, or order for money, or goods, or other thing or things of value, or any acquittance or receipt for money or goods, or other thing or things of value, or any endorsement or assignment of any bond, writing obligatory, bill of exchange, promissory note, or order for money or goods, or other thing or things of value, with intent to defraud the said State, public officers, Courts, or persons authorized as aforesaid, or any other person or persons whatsoever, knowing the same to be so falsely and fraudulently made, forged, altered, or counterfeited ; every such person so offending, and being thereof lawfully convicted, shall be punished by imprisonment and labor in the penitentiary, for any time not less than four years, nor longer than ten years."

SEC. IX. " If any person shall falsely and fraudulently make, forge, counterfeit, or alter any note, bill, draft, or check of, or on, any person, body corporate, company or mercantile house or firm, or purporting so to be ; and fraudulently utter, publish, pass, pay, or tender the same in payment, or demand payment of the same, knowing the said bill, note, draft or check, to be forged and counterfeited, or falsely and fraudulently altered, such person so offending, shall on conviction, be punished by confinement and labor in the penitentiary, for any time not less than two nor longer than ten years."

SEC. X. " If any person shall fraudulently make, sign, forge, counterfeit, or alter, or be concerned in the fraudulent making, signing, forging, counterfeiting or altering, any other writing not herein provided for, with intent to defraud any person or persons, bank or other corporate body, or shall fraudulently cause or procure the same to be done, such person so offending shall, on conviction, be punished by imprisonment and labor in the penitentiary, for any time not less than two years, nor longer than five years."

SEC. XIV. "If any person shall designedly, by color of any counterfeit letter or writing, made in any other person's name, or fictitious name, obtain from any person money, goods, chattels or other valuable thing, with intent to defraud any person, mercantile house, or body corporate or company, of the same, such person so offending shall, on conviction, be punished by imprisonment and labor in penitentiary for any time not less than two years, nor longer than seven years."

We agree with counsel for the prisoner, that this prosecution cannot be sustained under the 9th section of the 7th division of the Code, because that applies to *notes, bills, drafts or checks,* and this instrument is neither. And further, we concur with him in holding, that a conviction cannot be had under the 10th section of that division. Not, however, for the reasons that he assigns, that the indictment does not charge that the instrument alleged to be forged, was some "*other writing,*" not otherwise provided for by the Code, nor yet, because the offence is provided for in the 14th section of this division. For it is evident that the 14th section does not embrace the crime of *forgery.* But it is an offence expressly included in the 1st section of the 7th division of the Penal Code.

After enumerating a great variety of documents, public and official, which are made the subject matter of forging and counterfeiting the 1st section enacts, that if any person shall falsely and fraudulently make or forge " any deed, will, testament, bond, writing obligatory, bill of exchange, promissory note, *or order for money or goods,* or other thing or things of value, with intent to defraud any person whatever, any such person so offend-

ing, and being thereof lawfully convicted, shall be punished by imprisonment and labor in the penitentiary, for any time not less than four, nor longer than ten years." *New Digest,* 800, 801.

Mr. Clark contends, that admitting the paper to be an order for the delivering of fifteen dollars' worth of goods, that it is not an order of the kind intended by this section ; that it has long been settled in England upon a similar Statute, that the order within the purview of the Court, must be one imparting a *right* on the part of the person who is supposed to have made it, and a *duty* on the part of the person on whom it is made ; that where it seems to leave compliance or refusal *optional,* and applies rather to the *favor* than the *justice* of the person on whom it is drawn it is not within the Statute as not being an order on which the party taking it can place any reliance ; that it is the usurpation of another's right, which the Legislature intended to punish and prevent.

That this ingenious distinction is supported by authority, we cannot deny. 1 *Leach,* 111, *note. Ib.* 134.   *Ib.* 365.   2 *Leach,* 615.  *Mitchell's case, Foster,* 119.   3 *Chitty's C. L.* 1033.   Indeed we are constrained to admit that the Statute of 7 *Geo. II. c.* 22, of which that portion of ours upon which I am commenting, is almost a transcript, repeatedly received the construction in the British Courts which is claimed by counsel, and that the decisions have been uniform to that effect, and are so recognized by standard writers on the Criminal Law of that country.

But the strict construction adopted in relation to this English Statute, never has obtained in the American Courts.  It was enforced in New York, and the Legislature amended the Act so as to extend to orders purporting to be made without, as well with, right or authority in the person whose name may be forged. *The People vs. Thompson,* 2 *Johns. Cases,* 342.

It arose wholly in the mother country from the penalty which was to follow a conviction, viz : death ; and to apply it under our Code, which is not only mild in its punishments, but which declares that any indictment shall be deemed sufficiently technical and correct, which states the offence so plainly, that its nature may be easily understood by the Jury, would be to thwart

the designs of the Code. The word "order," is in daily use all over the land, and its meaning well understood. We send *orders* to tradesmen, by our children, servants and neighbors, and through the mails, for merchandise, without ever supposing for a moment, that we possess the power to compel their compliance. It is a mere *request,* and nothing more. We are clear, therefore, that this case is within the mischief intended to be prevented, as well as within the language of the 1st section of the 7th division of the Code.

Counsel for the prisoner further insists, that the offence proven, if any, fell within the 14th section, as heretofore cited, and consequently, was not embraced within the 10th section, as ruled by the Court. The Circuit Judge admitted, and so charged the Jury, that an indictment might be framed under this section and a conviction had, provided the necessary proofs were made; and in this we think he was right.

The learned counsel is both right and wrong, in respect to his position. *Hoskins* having obtained from *Hora* money and goods by color of this forged writing, made in the name of *Vines,* is unquestionably liable, under the 14th section, for that offence. But it is not true, that he could be convicted under that section for the crime of forgery. Obtaining goods on false writings is one offence; forgery is another, and altogether different offence. And we are all satisfied that the Jury, who are made the judges of the law as well as of the facts, are fully warranted in returning a verdict of guilty against the defendant, within the 1st section of the 7th division of the Penal Code, upon which we must presume the indictment was framed.

The judgment against the prisoner must consequently stand affirmed.