### SARAH (a slave) *v.* THE STATE, 28 Miss. Rep., 267.

#### ATTEMPT TO MURDER BY POISON.

To prepare poison with intent to kill a person, and the crime of administering such poison for a like purpose, are two different offenses. Yet there can be no objection to an indictment on the ground that these two offenses are charged in it against the same person.

In England it is held to be irregular where two distinct felonies are charged in the same indictment, but in the United States the courts have held that distinct felonies of the same character, though differing in the degree of punishment, may be charged in the same indictment against the same person.

The words "persons in this state" in the statute against poisoning, were intended to designate the jurisdiction of the offense, and not as descriptive of the persons against whom the crime might be committed. And an indictment not alleging that the person attempted to be poisoned, was "a person of this state," is not deficient on that ground.

In order to show that the alleged act of administering the poison came within the meaning of the statute, it is essential to allege the manner in which the poison was administered.

The word "administer" used in the statute, does not mean that the article given in order to effect the felonious intent, must be given under the pretense that it is a medicine. The intention of the legislature was to punish any preparation, giving, or administration of any substance known as a medicine, with intent to kill.

The compelling the prosecutor to elect which count of the indictment on which he will proceed, is a matter in the discretion of the court, and a refusal to do so is no ground of reversal.

In an indictment for a statutory offense it is sufficient to describe the offense in the words of the statute. But this rule can only apply in cases in which there is a sufficient description of the offense intended to be created by the legislature.

In all cases of felony in which malice is the gist of the offense, malice must be averred in the indictment, otherwise it will be defective and the judgment arrested on motion. HANDY, J., dissenting.

Error to Warren circuit court. BARNETT, J.

*C. L. Buck* for plaintiff in error.

1. To sustain an indictment under the 53d section of Hutch. Code, 521, it must appear in proof that the poison or medicine was prepared or administered by the defendant under the pretense that it was a medicine; and proof that the defendant

merely prepared or administered poison "with intent to kill," will not sustain the indictment. The latter offense is punishable under the succeeding section of the same page. No adjudicated case can be found upon the question, as there has been found no statute similar to it. It is, however, submitted, that the section explains itself, and requires nothing more than a perusal to show the error of the court below. If it be contended that section 55 protects the conviction, it will be apparent to the court that there was not a single averment in the indictment necessary to sustain it under the latter section. The proof in the cause is, that "a deadly poison" and not "a medicine" was prepared and administered by the appellant.

2. The judgment below must be reversed, and the indictment quashed, because there is no averment in either of the counts that the persons for whom the poison was prepared and administered to, were "persons in this state." The section provides, that "if any slave shall prepare, exhibit, or administer to, any person in this state, with intent to kill such person," etc.

In the first count, there is an entire omission of this essential averment. To "prepare medicine, with the intent to kill" any person out of this state, is no offense under this section, and this count is, therefore manifestly defective. It may be contended in argument, that this omission is supplied in the second count, as it is there charged that the poison was administered in this state, and that, therefore, the persons to whom it was administered were "persons in this state." It will, however, require neither argument nor authority to this court to sustain the principle of law declared, as well in all the elementary books, as in adjudicated cases, and every material allegation must be accompanied with time and *venue*, and must be positively averred, and that inference is never sufficient in the statement of either. The *venue* and time here stated relates to the "administering" of the poison, a fact that required a distinct and positive averment itself. We can only infer that the parties to whom the poison was administered were "persons in this state," from the averment that the poison was administered here. This is clearly error. See Chitty Cr. Law, 231 ; 1 Sess. Cas., 159, 416 ; 2 ib., 3, 8 ; 2 Stra., 900 ; 1 Salk., 317 ; 3 Mod., 53 ; 2 Hawk., ch. 25,

§ 60; 1 Lord Raymond, 1363; also to the decisions of this court.

It is absolutely necessary to charge in the indictment under the statute, that the parties for whom the poison was prepared, and administered to, were "persons in this state." Chitty Cr. Law, 280; ib., 282, note; 2 Hawk., ch. 25, § 84, 112; Chitty Cr. Law, 284, 285; 13 S. & M., 263. The indictment must be quashed because there is no allegation that the poison was prepared with intent to murder. This averment is absolutely requisite. The word "murder" is a technical one, which cannot be omitted in indictments for murder, and to use the word "kill" is insufficient. 1 Russ., 470; 3 Chitty Cr. Law, 737; Archb. Cr. Pl., 49. It is true the statute uses the words "to kill;" but the offense to be punished was evidently doing the act with intent to kill and murder, as the mere act of killing does not necessarily imply any offense. If the word "kill" only be used in an indictment for homicide, the party can only be convicted of manslaughter. See Russell, Archbold and Chitty on Criminal Law.

The words "malice aforethought" are wholly omitted in both counts, and are yet absolutely necessary. Russell on Crimes, 470; 1 Dyer, 69. Without these words, every law-book upon the subject declares, that a party cannot be convicted of murder. Archbold expressly, as well as Russell, lays down this doctrine. Our own statute lays down this rule, that there can be no murder without premeditated malice. If, then, without the use of these technical words in the indictment a party cannot be convicted of the crime itself, surely, without them, the prisoner cannot be convicted of the attempt to commit it. The offense created by our statute, and under which the present indictment is framed, is an attempt to kill and murder with "malice aforethought." The allegations in the indictment and the proof must come fully up to this, or else they are insufficient. The word "feloniously," it is true, is used, but this is insufficient. Manslaughter is a felony. 1 Russ., 470. The word "feloniously" does not imply "malice aforethought," the last being the ingredient in homicide which divides manslaughter from murder, and raises the offense to the highest degree. These objections

should have sustained the motion in the court below to quash. The motion to quash, when made, reaches every objection to the indictment, and the motion in this case is because the indictment is insufficient; and second, because felonies were improperly joined in the indictment. This motion was overruled, and exceptions taken. But the objection is good on demurrer, or motion in arrest of judgment. There is no question on this point. Chitty Cr. Law, 661, 664, 752, 754; Dyer, 69; Archbold, 51–54; Hawk., 468, §4; Hale's P. C. At common law every defect reached by demurrer, was good on motion to arrest, etc. In England, this principle was, to some extent, changed by statute. But we have no statute upon the subject, and the rule with us is unchanged. This point has been settled by our own courts. In Kirk v. State, 13 S. & M., 407, the court expressly decides that every objection to an indictment that may be reached by demurrer, can be reached by motion in arrest of judgment.

The second count in the indictment is either double or it is contradictory; it charges, first, an administering and then a mingling of the poison with coffee, with intent that it should be administered. This can be reached on motion to quash, or motion in arrest of judgment. But the court below overruled both motions, and this court will correct the error.

The court below erred in refusing defendant's instructions, and giving those asked by the state. The latter use the words "with intent to kill," and omit the "murder." Moreover, to sustain the indictment, the proof must show the poison was prepared or administered under pretence of its being a medicine. This the proof wholly fails to establish.

The court below erred in overruling the motion to quash, because two distinct felonies were charged in the indictment, and also in refusing to compel the state to elect on which count it would proceed. It is not the statement of the same offense, or different degrees of the offense in the indictment, which is the legitimate office of several counts; but each count charges a separate, distinct and independent felony, thereby placing the party upon trial for two offenses at the same time. This is contrary to all rule and practice in criminal proceedings. See

Chitty Cr. Law, 248; 1 Leach, 510, 511; 8 East, 41; 2 Campbell, 131; 8 Wend., 211; 2 Hale, 173; 2 Leach, 1103; 12 Wend., 425; Galloway's case, Ry. & M., C. C. R., 234; 7 Serg. & Rawle, 469; Wash. v. State, 14 S. & M., 120; Brantley v. State, 13 ib., 468.

*D. C. Glenn,* attorney general.

SMITH, C, J.:

The prisoner was convicted in the circuit court of Warren county, under the provisions of the fifty-third section of the statute of 1822, Hutch. Dig., 521.

The indictment contains two counts. The first count charges the willful, malicious, unlawful and felonious preparation of a certain medicine, namely arsenic, alleging the said arsenic to be a deadly poison, and that the prisoner well knew that arsenic was such deadly poison, " with intent there and then to kill" the persons named in the indictment, "contrary to the form of the statute," etc. The second count charges the " willful, malicious, unlawful and felonious" administration to certain persons named in the indictment, of "a certain medicine commonly called arsenic, the said arsenic being then and there a deadly poison, by then and there mixing and mingling the said arsenic in certain coffee which had been prepared for the use of the said" persons, " with the intent, then and there, that the said coffee should be administered to them for their drinking the same, and the said coffee, with which the said arsenic was so mixed and mingled as aforesaid, afterwards, namely, etc., in the county aforesaid, was delivered to the said" persons, " then and there to be drunk; and said persons, not knowing said arsenic to have been mixed and mingled with said coffee, did afterwards, namely, etc., in the county aforesaid, take, drink and swallow, etc., a large quantity of said arsenic, so mixed and mingled with said coffee" by the prisoner " with the intent then and there to kill the said" persons, " contrary to the form of the statute," etc.

In the court below, before trial, a motion was made to quash the indictment, and after verdict the prisoner's counsel moved in arrest of judgment. There was also a motion made for a new trial, which was overruled. Hence the cause is brought before

us by writ of error.   The grounds relied on in support of these
motions are now urged as reasons for reversing the judgment.

First, it is insisted, that the indictment should have been
quashed, because the prisoner was charged with two distinct,
separate and independent felonies.

The statute under which the conviction was had, provides that
"if any slave, free negro or mulatto, shall prepare, exhibit or
administer to any person or persons in this state, any medicine
whatsoever, with intent to kill such person or persons, he or she
so offending shall be judged guilty of a felony, and shall suffer
death." It is manifest, that distinct and separate offenses have
been created by this act. To prepare any medicine with intent
to kill any person, is a separate and distinct offense from the
crime of administering such medicine for a like purpose. This
is clear, for the evidence, which would sustain an indictment for
the preparation by a slave, free negro or mulatto, of medicine
with the intent to murder any person, would not be sufficient to
convict, where the party is charged with the administration of
any medicine for the same purpose. It must, therefore, be con-
ceded, that the indictment charges the prisoner with two distinct
felonies.

But does it follow, hence, that the refusal of the court to quash
the indictment is ground for reversing the judgment?

The rule is well settled that, in point of law, there is no ob-
jection to the insertion of several distinct felonies of the same
degree in the same indictment, against the same offender.[1]  1
Chitty, Cr. Law, 253; Kane v. The People, 8 Wend., 203; 12
ib., 425; Wash. v. The State, 14 S. & M., 120.   But while this
is the acknowledged doctrine, both in this country and England,
it is held in the courts of the latter country to be irregular, in

---

[1] Wharton Am. Cr. Law, 414, *et sequitur;* Baker v. State, 4 Pike's Ark., 56; Peo-
ple v. Rynders, 12 Wend., 425; Edge v. Commonwealth, 7 Barr, 275; Coulter v.
Commonwealth, 5 Metc., 532; State v. Kirvy, Miss., 317; Mills v. Commonwealth,
1 Harris, 631; Hoskins v. State, 11 Ga., 92: Engleman v. State, 2 Carter, (Ind.,) 91;
U. S. v. O'Callahan, 6 McLean, C. C, R., 569; Johnson v. State, 29 Ala., 62; Orr v.
State, 18 Ark., 540; Young v. Rex, 3 T. R., 105; Rex v. Jones, 2 Camp., 132; Rex
v. Saunders, 2 Burr., 984; Rex v. Kingston, 8 East, 41; Archbold Cr. Pr. & Pl., 310;
Commonwealth v. Tuck, 20 Pick., 356; State v. Brady, 14 Vermont, 353; State v.
Crocker, 3 Harr., (Del.,) 554; State v. Grisham, 1 Hayw., 12; State v. Flye, 26 Me.,
312; People v. Austin, 1 Park. Cr. R. 154; State v. Patterson, 1 W. & M., 305;
Commonwealth v. Manson, 2 Ashmead, 131· State v. Hogan, Charlt, 474.

cases of felony, to charge upon the prisoner more than one distinct offense at one time in the same indictment.   And if the joinder of more than one distinct felony in the same indictment be objected to before plea, the court will quash the indictment, lest it should embarrass the prisoner in his defense, or prejudice him in his challenge to the jury.   But this appears to be regarded not as a right, strictly speaking, of the accused, but as a matter submitted to the discretion of the court, which it might exercise as a measure of prudence for the safety of the accused.[1] Chitty, Crim. Law, 253; King v. Strange, 34 Eng. Com. L. R., 341.   In the case last cited, which was an indictment under the statute of 7 Will. 4, and 1 Victoria, the offense of stabbing and cutting, with intent to murder, with intent to maim, and with intent to do grievous bodily harm, were all included in the same indictment; and notwithstanding the judgment is by the statute different, being for the offenses charged in the first count capital, and for the others transportation, the court even refused to compel the prosecutor to elect on which count he would proceed.

The courts in many of the states of this confederacy have gone a step further, and hold that distinct felonies, of the same character, though differing in the degrees of punishment attached by law to their perpetration, may be charged in the same indictment against the same person. Wharton's Crim. Law, p. 149.

In the case at bar the felonies charged in the indictment differ neither in character nor in the punishments attached to their commission.   They manifestly refer to the same transaction, and depend necessarily to some extent on the same evidence.   I am, therefore, of opinion that the joinder of the two felonies charged in the indictment was not good ground for quashing it.

Secondly. It is contended that the indictment should have been quashed, because there is no averment in either of the

---

[1] Archbold Cr. Pr. & Pl., 310; Young v. Rex, T. R., 98; Wharton Am. Cr. Law, 414, 422; Kane v. People, 9 Wend., 203; Wright v. State, 4 Humph., 194; Weinzorpflin v. State, 7 Black., 186; State v. Hazzard, 2 R. I., 474; State v. Jacobs, 10 La. R., 141; Ketchingham v. State, 6 Wisc., 426; Commonwealth v. Hills, 10 Cushing, (Mass.,) 530; Donnelly v. State, 2 Dutch., (N. J.,) 463, 601; Lozier v. Commonwealth, 10 Gratt., 708; Rex v. Austin, 7 C. & P., 769; Rex v. Hartall, ib., 475; Rex v. Wheeler, ib., 170; Regina v. Pulham, 9 C. & P., 281; People v. Costello, 1 Denio, 83; State v. Hogan, R. M. Charlton, 474; Dowdy v. Commonwealth, 9 Gratt., 727; State v. Jackson, 17 Mo., 544; Mayo v. State, —— 32; Cash v. State, 10 Humph., 111, 114; 1 Bishop Cr. Law, 206.

counts, that the persons for whom it was administered, were " persons in this state."

In my opinion this exception is based upon a misconstruction of the statute.

That construction assumes that it was the intention of the legislature, by the words " in this state," to designate the persons for whom, or to whom, to prepare or administer medicine with intent to kill, the statute declared to be a felony.    That is, that the medicine must be prepared for or administered to a person within the state at the time of the alleged offense. Hence, that these words constitute an essential part of the description of the offenses created by the act.

It cannot be imagined that the legislature deemed it necessary to declare that it was their intention to confine the operation of the law to acts performed within her jurisdiction ; as it will certainly not be contended that it was not known to it, that the statutes of this state could not extend to offenses committed without her jurisdiction.    A medicine or a poison might be prepared for a person, not at the time of the preparation within the state, but neither could it be administered to any one, in such a way as to violate any law of the state, unless the person who might be the subject of the felony were, at the time of the administration of the medicine or poison, within the jurisdiction of the state.    If, therefore, the words, " in this state," employed in the statute, are understood as characterizing the persons against whom the offense must be committed, they are useless and unmeaning.    But if these words are held to refer not to the persons against whom the offense may be committed, but to the felonious act itself, they are intelligible and proper, and the intention of the legislature becomes manifest.    It appears to me too evident to admit of question, that by the proper and legal construction of the statute, these words were intended to designate the jurisdiction in which the offenses are prohibited, and not as descriptive of the persons against whom they might be perpetrated.    Upon this interpretation of the act, the counts in the indictment, in reference to this exception, are unobjectionable.

Thirdly.  It is insisted that the second count in the indictment

charges the prisoner with two distinct felonies; and for that reason the court below erred in overruling the motion to quash.

This objection is untenable. In the count under consideration it is averred, that the prisoner mixed and mingled the medicine with coffee, which had been prepared for the use of the persons intended to be killed; but the alleged act of mixing the medicine with the coffee is not charged as an act of felony. It is stated as a part of the means or manner in which the administration of the medicine was effected. This was not only proper, but essential, in order to show that the alleged act of administering the medicine came within the meaning of the statute.

Fourthly. It is contended that a new trial should be awarded, upon the ground that the proof did not show that "the poison or medicine was administered under a pretence that it was a medicine." The statute affords no pretence for this exception. It declares, that "if any slave, free negro or mulatto shall prepare or administer to any person or persons, any medicine whatever, with intent to kill," etc. According to the evidence, arsenic was administered, which is not only a medicine, but a poison, and such is the case with many articles used as medicines, depending upon the quantity in which they are given. The word "administer," as used in the statute, does not mean that the article given, in order to effect the felonious intent, must be given or administered under the pretence that it is a medicine. The manifest intention of the legislature was to punish any preparation, giving, or administration of any substance known as a medicine, with intent to kill.

Fifthly. It is insisted that the court below erred in refusing to compel the prosecutor, upon the application of the prisoner's counsel, to elect upon which count of the indictment he would proceed.

We have seen[1] that it was no objection to the indictment, that it charged the prisoner with two distinct felonies in separate counts; although it rests with the court as a matter of prudence and discretion to order the indictment to be quashed for that reason, when the objection is made before plea.[2] The same an-

[1] *Supra;* notes [1]755 [1]756.          [2] Ibid.

swer may be given to this objection; it was a matter of discretion with the circuit court, and is, therefore, no ground upon which the judgment should be reversed.[1] Rex v. Strange, 34 Com. L. R., 341; People v. Rynders, 12 Wend., 425; Cone v. Hope, 22 Pick. R. 1.

Sixthly. It is contended that the court below erred in overruling the motion in arrest of judgment.

'Neither count of the indictment charges the alleged felony to have been committed with malice aforethought. This, it is insisted, is a fatal defect.

The words used in the statute are, "with intent to kill." In Bradley v. The State, 10 S. & M., 618, it was holden that an indictment for an assault with intent to kill, means an indictment for an assault to commit murder, according to the understanding of this court; therefore the words above quoted from the statute, mean "with intent to commit murder." Hence, the gist of the offense charged in the indictment is willful malice.

It is unquestionably true, as a general rule, that in an indictment for an offense created by statute, it is sufficient to describe the offense in the words of the statute. But, it is manifest, that this rule can only apply in cases, in which there is a sufficient description of the offense intended to be created by the legislature. It is a mistake, says Justice Earl, (Blease v. The State, 1 McMul. R., 479,) to suppose, that it is always sufficient to allege the offense in the mere words of the statute; for where it consists of several acts, they should be averred with the same particularity, as at common law. The rule, adopted in this court,

[1] Wharton Am. Cr. Law, 414; Baker v. State, 4 Pike's Ark., 56; Edge v. Com., 7 Barr, 275; Coulter v. Com., 5 Metc., 535; State v. Kirvy, Miss., 317; Mills v. Com., 1 Harris, 631; Hoskins v. State, 11 Ga., 92; Engleman v. State, 2 Carter, (Ind.,) 91; U. S. v. O'Callahan, 6 McLean, C. C. R., 569; Johnson v. State, 29 Ala., 62; Orr v. State, 18 Ark., 540. In misdemeanors the joinder of several offenses will not, in general, vitiate the prosecution in any stage. Wharton Am. Cr. Law; Young v. Rex, 3 T. R., 105; Rex v. Jones, 2 Camp., 132; Rex v. Saunders, 2 Burr., 984; Rex v. Kingston, 8 East, 41; Harman v. Com., 12 S. & R., 69; Com. v. Gillespie, 7 S. & R., 476; U. S. v. Peterson, 1 W. & M., 305; People v. Costello, 1 Denio, 83; Weinzorpflin v. State, 7 Black., 186; Com. v. Demain, Brightly, 441; U. S. v. Porter, 2 Cr. C. C. R., 60. In cases of felony, where two or more distinct offenses are contained in the same indictment, it may be quashed, or the prosecutor be compelled to elect on which charge he will proceed. Wharton Am. Cr. Law, 416; Kane v. People, 9 Wend., 203; Wright v. State, 4 Humph., 194; Weinzorpflin v. State, 7 Black., 186; State v. Hazard, 2 R. I., 474; State v. Jacob, 10 La., 141; Kitchingham v. State, 6 Wisc., 426; Com. v. Hills, 10 Cush., 530; Donnelly v. State, 2 Dutch., (N. J.,) 463, 601. See Wharton Am. Cr. Law, 423.

is, that indictments, especially upon highly penal statutes, must state all the circumstances, which constitute the definition of the offense in the act, so as to bring the defendant precisely within it.[1]   Anthony v. State, 13 S. & M., 262.

It follows, necessarily, from this doctrine, in all cases of felony, in which malice is the gist of the offense, that the malice must be averred in the indictment; otherwise it will be defective, and the judgment arrested on motion.   We believe there is not a recognized exception to this rule either in England or this country.   And this is the case, whether the offense exist at common law, or be one of statutory creation.   Thus, in murder, where the death has been caused by the administration of poison, or by any other means, however indicative of a malicious intent, it is essential to charge the act to have been done with malice aforethought; and no other words will suffice.   So, in an indictment under the statute of 9 Geo. 1, which made it felony for any person to burn any dwelling-house, out-house, barn, stable, etc., it was holden necessary, that there should be an averment of willful malice, although the statute did not contain the words " willful and malicious;" for the reason, that malice was of the essence of the offense.   2 East, P. C., 1033.

The statutes of 7 Will. 4 and 7 Vict., provide, that whoever shall administer, or cause to be administered, any poison or other destructive thing, " with intent to commit murder," shall be guilty of a capital felony.   The only material difference between these statutes and the one under consideration consists in the use of the words, " with intent to commit murder," instead of

---

[1] Wharton Am. Cr. Law, 364; State v. Foster, 3 McCord, 442; State v. O'Bannon, 1 Bail, 144; State v. La Preux, 1 M'Mull., 488; State v. Noel, 5 Black., 548; Chambers v. People, 4 Scam., 351; U. S. v. Lancaster, 2 McLean, 431; State v. Duncan, 9 Port., 260; State v. Mitchell, 6 Mo., 147; State v. Helm, 6 Mo., 263; Ike v. State, 23 Miss., 525. For a very liberal view on this point see Com. v. Fogerty, 8 Gray, 489. See, also, State v. Gibbons, 1 South., 51; State v. Calvin, Charlton, 151; 1 Hale, 517, 526, 535; Staunf., 130 b; Foster, 423, 424; Hard., 2; Dyer, 304; Kelyng, 8; Com. Dig. Jus., G. 1; 1 Chitty on Pl., 357; Moore, 5; 1 Leach, 264; 1 East, P. C., 419; 2 Hale, 170, 189, 190, 193; 1 Eliz., c. 1, § 25; 3 Dyer, 363; 2 Lord Raym., 791; 2 Burr., 679; 1 T. R., 222; U. S. v. Lancaster, McLean R., 431; People v. Allen, 5 Denio, 76; Com. v. Hampton, 3 Gratt., 590; State v. Pratt, 191.   If the indictment profess. to recite the statute, a material variance will be fatal, or if the statute do not support the verdict, it must fail.   Wharton Am. Cr. Law, 365; Butler v. State, 3 McCord, 383.   Defects in the description of a statutory offense will not be aided by verdict (2 East, 333), nor will the conclusion, *contra formam statuti*, cure it.   Lee v. Clark, 2 East, 333; 2 Hale, 170; Rex v. Jukes, S. T. R., 536; Com. Dig. Information, D. 3.

the words, "with intent to kill," employed in the latter. But, according to the construction of this court, the words "with intent to kill" mean "with intent to commit murder." The precedents of indictments, under the English statutes, all show, that it was deemed essential to charge the offense to have been committed with malice aforethought. And we apprehend, that it is not to be doubted, that an indictment, framed under those statutes, would be holden, in an English court, to be fatally defective, without such an averment.

The statute, ch. 64, § 33, Hutch. Dig., 960, declares it to be an offense punishable by imprisonment in the penitentiary, for any person to shoot at another, "with intent to kill such other person;" and the statute of 1822, ch. 37, § 55, Hutch. Dig., 521, makes it a capital offense for any slave "to burn any dwelling-house, store, cotton-house, gin or outhouse, barn or stable." But, in neither of the offenses created by these statutes, is willful malice made an ingredient, by express words. It will not, however, be denied, that malice is the very gist of each of these offenses. For, it is not to be doubted, that the legislature did not intend to punish a person for shooting at another in just self-defense, although such person intended to kill the assailant; or to punish a slave for setting fire to and burning his master's stable or outhouse at his master's command. These statutes furnish examples, which show conclusively, that wherever a malicious intent is an essential ingredient in the constitution of an offense created by statute, although it is not so made by the express words of the act, the indictment will be invalid, unless it contain an averment of the malicious intent. For, if indictments, framed under these statutes, would be valid, because they contain a description of the offense in the language of the statute, the consequence would be, that the jury would be compelled to convict, and the court to pronounce judgment, however innocent the accused might be of any intent or act held criminal by the law.

We are unable to perceive a distinction, in reference to the question under consideration, between the statute, under which the prisoner is charged, and the statute above referred to. For, in neither is malice, by express words, made an ingredient in

the offense therein defined.   Hence, if it be necessary, in order to warrant the conviction of a slave for setting fire to and burning a stable, to charge the act to have been done with malice, it must, upon principle, be equally essential to charge the administration of poison with intent to kill, to have been done with malice aforethought, before the accused can be legally convicted of a capital offense.

The indictment in the case of Anthony v. The State, above referred to, was framed under the statute of 1822, ch. 64, § 36, Hutch. Dig., 521; as amended by the act of 1825, Hutch. Dig., 532, art. 8, § 1.   By the original act, it was made a capital felony for any slave to commit an assault and battery upon any white person, " with intent to kill."   The amendatory act provides, that the foregoing act, " when the killing does not actually occur, shall be so construed as to render the proof of malice aforethought expressly necessary, to subject the person or persons therein named to capital punishment."   The indictment charged the offense to have been committed " feloniously, willfully, and of his malice aforethought."   The jury, upon the evidence submitted to them, found the accused guilty, and that the act was committed with express malice, and sentence of death was pronounced.   Upon the removal of the cause into this court, the judgment was reversed, upon the ground of the insufficiency of the indictment, to authorize the punishment of death.   The court say, the indictment contains no averment of that species of malice (that is, express) which alone authorizes capital punishment.   This is a direct decision upon the question under consideration.

According to these views, both counts in the indictment were defective.   The court, therefore, erred in overruling the motion in arrest of judgment.

Let the judgment be reversed, and the prisoner remanded to be proceeded against in the court below.

HANDY, J., dissenting:

I am unable to concur in the conclusion of a majority of the court, that the indictment in this case is insufficient; and I will briefly state the view I take of the subject.

The indictment is framed under the 53d section of the act of 1822, Hutch. Dig., 521, which provides, that, "if any slave, free negro or mulatto, shall prepare, exhibit or administer to any person or persons in this state, any medicine whatsoever, with intent to kill such person or persons, he or she so offending shall be judged guilty of a felony, and shall suffer death." It contains two counts; one charging the preparation, and the other the administration of the poison, which acts are severally charged to have been done " knowingly, wilfully, maliciously, unlawfully and feloniously," and "with the intent to kill" the persons concerned.

The objection taken to the sufficiency of the indictment is, that it contains no charge that the poison was prepared or administered with intent to murder, or of malice aforethought; and although the indictment charges the acts to have been done wilfully, maliciously, feloniously and with intent to kill, yet it is urged that malice is a necessary ingredient in the offense, and that in such cases it is necessary to charge in appropriate legal terms that the offense was committed with malice aforethought. This is undoubtedly the rule in relation to offenses at common law, and the authorities cited by the counsel for the plaintiff in error have reference to that class of offenses. But the crime, in this case, is the creature of statute, and must be regulated by the principles applicable to statutory offenses. The rule is thus accurately stated in a recent useful and practical work upon criminal law: " It is a well-settled rule, that in an indictment for an offense created by statute, it is sufficient to describe the offense in the words of the statute, and if in any case the defendant insists upon a greater particularity, it is for him to show, that from the obvious intention of the legislature, or the known principles of law, the case falls within some exception to such general principle." Whart. Am. C. L., 132. This principle is well sustained by reason and authority. United States v. Batchelder, 2 Gall., 15; State v. Chick, 2 Ala. R., 26; State v. Blease, 1 McMul. R., 475. When the legislature have created an offense and clearly described its essential qualities, it is to be presumed that it was intended to dispense with the common law requisites pertaining to offenses of a like nature,

and to mark out and characterize the crime intended to be punished; and in an indictment for such an offense, it is clear that it is sufficient to describe it in the terms of the statute, because the legislature has fully pointed out the nature and description of the crime intended to be punished. They have made both the crime and its punishment.

This principle appears to be decisive of the point in question, for the indictment follows the language of the statute in describing the nature of the offense, unless this case can be brought under some exception to the general rule.

Counsel has relied upon the precedents in Archbold's Crim. Pl. of indictments for attempts to poison, under the English statutes, in which the offense is charged to have been committed " of malice aforethought." These precedents do not appear ever to have had judicial sanction upon the point in question, and may, in many instances, not improperly be ascribed to a disposition to adhere to ancient forms, which superabound in redundancy and circumlocution. But the English statute is very different from ours. Its provisions are against persons who shall administer poison " with intent to commit the crime of murder." The use of the common law term, " the crime of murder," may require that an indictment in such a case should charge the offense with all the ingredients necessary at common law to constitute the crime of murder. But where the offense and the terms used in designating it are purely statutory, no such principle could apply, and the offense would stand as to its nature and essential ingredients, a new creature of law, to be judged of by the principles of reason and justice inherent in it, and not by the forms of the common law.

Let us apply this principle to the present case. The offense is one created by statute. Its character and essential qualities are fully but simply described in the statute. The provision is, that if any slave shall prepare or administer medicine to any person in this state with intent to kill, such slave, upon conviction, shall suffer death. Here the criminal act and the malicious intent are necessary to constitute the offense. When the act is charged to have been done, and with intent to kill the persons affected by it, the terms used convey the idea clearly and irre-

sistibly to the mind, that the act was done from previous malice. This necessarily results from the nature of the act, for it is impossible to say that a sane man could administer poison to another wilfully, maliciously and feloniously, with intent to kill him, without conveying the idea irresistibly of previous preparation, deliberation and malice. There is no room for sudden heat or impulse in such a case, and from the very nature of the act, any idea but that it was done with previous malice, must be excluded as completely as though the vocabulary of technical expletives were exhausted. In the present case, the statute has designated the offense in such a manner that both the act and the motive are set forth in the description of it in the act. And if there was anything wanting in it to make up the full measure of the offense, it is supplied by the terms in which it is characterized in this indictment, which, although they would not be sufficient in a common law offense, are sufficient in the case of an offense created and defined by statute. The charges in the indictment are plain and not to be mistaken, sufficiently full and comprehensive to bring offenders to punishment, but, at the same time, sufficiently explicit to give them ample notice of the nature, cause and extent of the accusation.

I concur in the conclusions of the court upon the other points considered, and am of opinion that the judgment below is correct and should be affirmed.