CHAMBERS *v.* THE STATE.

1. Where trial is had upon accusation founded on affidavit, there can be no conviction unless it appears that the offence was committed before the making of the affidavit charging its commission.
2. The necessary elements of venue must be established, either by direct or circumstantial evidence, with due certainty.
3. Where the sale of a chattel is conditional, the vendor reserving title, he is under no duty to the vendee to record the contract of sale, or take other precaution against loss from any wrongful sale of the property which may be made by the latter.
4. Where there is no evidence of good faith in selling property to which the accused had no title, the request to charge the jury that the sale of defendant's interest made in good faith would be no offence, ought to be declined.

April 21, 1890.

Criminal law. *Corpus delicti.* Venue. Evidence. Vendor and purchaser. Title. Notice. Record. *Bona fides.* Charge of court. Before Judge EVE. City court of Richmond county. May term, 1889.

Chambers was tried on an accusation of selling personal property held under conditional sale with title retained and purchase money not paid, and was convicted. He excepted to the denial of a new trial, his motion therefor consisting of the following grounds:

(1–2) Verdict contrary to law and evidence. The evidence showed the following: He signed an order to the National Cash Register Co., dated December 19, 1888, for a register of a certain description, agreeing to

pay $125 for it in five instalments. The order concluded with these words : "It is agreed that the title to the cash register shall not pass until the same is paid for in full, and shall remain your property until that time. This contract covers all agreement between the parties hereto." The register was one of a number put on exhibition at the Augusta Exposition in the autumn of 1888. Defendant traded for it with one Cohen, who was employed by the company to attend its exhibit. It was carried to defendant's saloon on Broad street, where it remained for two weeks ; and then the company's general agent went to the saloon, carrying the blank order or contract filled out, read it to defendant, who during the reading put his hand to his ear to aid his hearing, and then said, "Yes, that is it; just like a sewing-machine contract," and signed it; this being on the day it bears date. He paid the first instalment but no more, and $100 still remain due and payable. Twice after the default in meeting the second payment the company's general agent saw defendant and asked him who was to pay the notes; he replied that he had retained the register and he would pay for it. This agent had had no talk with defendant prior to taking the contract to his saloon for signature; was in there several times afterwards. Defendant subsequently sold the register and afterwards admitted that he had done so, as well as the fact that he signed the contract. The instrument bears no entry of record. Defendant introduced no evidence, but made a statement, the material portion of which is, that when the trade for the register was made, nothing was said about reserving the title ; that when the company's general agent and Cohen, the other employee mentioned, came to the saloon two weeks afterwards, it was the latter not the former who produced the paper for signature, saying he had to account for the register and wanted defendant to sign the

order to be sent to the company and thus have the matter kept straight; that defendant signed it without reading it, and it never was read to him, nor was anything then said about reserving the title; that the general agent subsequently had some talk with defendant about the register but never read any contract to him; that he also came to collect for it but even then never once said that the title was reserved; and that defendant never heard a word about the company's claiming to have reserved the title until his arrest. He is very deaf.

(3) The verdict is contrary to the charge that, to authorize the jury to find the defendant guilty, they must be satisfied from the evidence that he entered into a contract with the vendor named in the accusation, while by the terms of the purchase it was agreed and understood that the title to the register was to remain in the vendor until the purchase money was paid; that with the view or intent to defraud or defeat the vendor's rights he sold the register; and that loss was thereby caused to the vendor.

(4) The court erred in refusing to charge: "The jury must find that any loss claimed to have been sustained by the vendor, was sustained by the act of the defendant. If it was caused by or the result of the act of the vendor in failing to record the contract, or otherwise, that would be his misfortune and not defendant's wrong." And in charging instead thus: "The failure of the vendor to record the contract of sale, and his inability from that cause to follow the property in the hands of the purchaser, cannot protect the defendant. The vendor has the right to stand on his contract with the defendant, and may record it or not as he pleases."

(5) The court erred in refusing to charge: "The purchaser of personal property to which the title is retained by the vendor, may sell his interest therein in good faith, and commit no offence thereby."

FOSTER & LAMAR, for plaintiff in error.

C. H. COHEN, solicitor, and FLEMING & ALEXANDER, for the State.

BLECKLEY, Chief Justice.

1. We can know the evidence only by the brief of the same sent up in the record. That utterly fails to show that the alleged sale was made before the affidavit on which the accusation is founded was sworn to. The affidavit bears date April 15th, and the trial took place at the May term thereafter. The only evidence of any sale at all is by the witness Goodwin, who testified to an admission made by the accused, but when the admission was made does not appear. It may have been made after or before the making of the affidavit upon which the proceeding is based. All that the admission proves is that a sale had taken place when the admission was made, the actual time of the sale not being indicated by the language used in the admission. It follows that a new trial must be granted for this shortcoming in the evidence. Both the sale and the admission may have taken place after the 15th of April, the date of the affidavit charging the offence.

2. The evidence is also rather vague and uncertain on the element of venue. Perhaps the jury might have inferred that the accused resided in Richmond county, and that the sale took place in that county; but we think, if these propositions be true, they could and ought to be brought out in a clearer light, either by direct or circumstantial evidence. There will be opportunity for doing so on another trial.

3. Where the sale of a chattel is conditional, the vendor reserving title, he is under no duty to the vendee to record the contract of sale, or take other precaution against loss from any wrongful sale of the property which may be made by the latter. The refusal of the

court to charge as requested on this branch of the case was correct.

4. As there is nothing in the evidence tending to show that the accused sold his interest in the property in good faith, there was no error in refusing to charge the jury on that subject at the request of counsel. His admission was that he had sold the property, not his interest therein; adding, with a snap of his fingers, "get the money if you can."       *Judgment reversed.*