## SANDERS *v.* THE STATE.

1. The evidence warranted the jury in finding that the "root tonic" sold by the accused to the person mentioned in the bill of indictment was intoxicating, and that the same was sold within two years preceding the finding of the bill of indictment.
2. Where the witness testified to numerous sales at different times but could not fix the time of any one of the sales, it was not error for the court to refuse to compel the State's counsel to elect as to which particular sale he would demand a conviction. In

such case, it would be sufficient for the jury to be satisfied beyond a reasonable doubt as to any sale whatever which took place prior to the finding of the indictment and within the statutory period of limitation.   *Judgment affirmed.*

January 11, 1892.

Criminal law.   Liquor.   Practice.   Before Judge Mc-WHORTER.   Elbert superior court.   March term, 1891.

Sanders was charged with having unlawfully sold to one Brawner in Elbert county, on January 15, 1890, one pint of intoxicating liquor, to wit, root tonic.   He was found guilty; his motion for new trial was over-ruled, and he excepted.   The grounds of the motion were, that the verdict was contrary to law, evidence, etc., and that the court erred in this: After the evidence was closed and before argument to the jury, counsel for the defendant moved the court to require the State to elect and put the defendant on notice upon which of the sales proved it would rely for a conviction, which motion was overruled.

The testimony as to whether or not root tonic, as sold by defendant, was intoxicating, was conflicting.   As to the sale or sales made to Brawner, his was the only testimony, and was as follows: He bought root tonic from defendant on or about the 15th of January, 1890, having been buying it all the time.   Bought it in Elbert county.   Got about a thousand gallons, he reckoned. On this particular occasion he got as much as a pint. This root tonic would certainly intoxicate.   On cross-examination: He did not remember this particular pint charged on the 15th of January, 1890, whether he bought that or not; did not remember any particular time.   Bought it whenever he came to town and when he felt like it when he did come to town.   It is "sorter" like water; he could drink it just as long as he could hold it.   Recalled, he testified: Really he could not say to save his life whether he got any root tonic from defendant during the month of January; would not swear

that he got any in February or March, but thought he got it every month, in January, February, March, April, May, June, July and August, and all of them; did not know that he could recall any particular time, but recollected one particular time that the stuff like to have killed him. The witness then detailed some occurrences of one evening, without specifying the date, when he bought and drank in all six or seven bottles and went "plumb mad," and said that the effect was more narcotic than intoxicating; he thought it was both poison and liquor effect; it seems it just made him sleepy, and liquor would not have that effect unless he took an overdose. He thought this was in March, but could not tell the exact date; did not remember any other facts surrounding the time by which he could locate it; did not remember what particular thing brought him to town; he just came on business; he did not remember any particular day, the first Tuesday or any such time during the year that he came to town; he did come to town the first Tuesdays, but could not swear that he came the first Tuesday in March, and there was no other particular public day that he could recall; but whenever he would drink enough of it it would certainly "floor" him. "There is no use in slipping upon that. I mean it would make me drunk as a cooter." He bought this liquor numberless times during that year; every time he came to town; reckoned he bought one thousand gallons during that year; supposes he bought it more than twenty-five times. On recross he testified: He bought large quantities of it in 1891. Sometimes it was root tonic and sometimes one name and another. "We always called it tonic, and sometimes they would correct us and say it is not tonic but moxie. I won't swear whether I bought tonic during the year or not. What I did buy was being openly and publicly sold. There was no 'blind tiger' or hiding or anything of the sort."

McCURRY & PROFFITT and JOHN P. SHANNON, for plaintiff in error, cited 81 *Ga.* 753; 79 *Ga.* 501, 503, 664; 80 *Ga.* 714; 85 *Ga.* 220.

W. M. HOWARD, solicitor-general, by J. H. LUMPKIN, *contra*, cited 17 *Ga.* 439; 34 *Ga.* 202; 26 *Ga.* 611; 11 *Ga.* 92, 226; 59 *Ga.* 402; 18 Ark. 543; 20 Ark. 160; 7 Mo. 317; 3 Hill (N. Y.), 159; 22 N. Y. 299; 2 Allen, 229.